## Empire National Bank of Clarksburg, W. Va., *v.* High Grade Oil Refining Company, Appellant.

*Negotiable instruments—Promissory notes—Time of payment—Collateral notes—Right to call for additional security—Collateral subject to other indebtedness—Sale of collateral—Notice of sale.*

1. The fact that a promissory note, otherwise negotiable, contains an independent contract by which the holder has the right to call for security, and provides that, on the failure to respond, the obligation shall be deemed to be due and payable, does not make the time of payment so uncertain as to destroy the negotiability of the note.

2. A contract in a promissory note making collateral subject to the payment of other indebtedness, besides the one for which the collateral was particularly pledged, is a valid agreement, and it follows that the right to sell the collateral for the nonpayment of the other indebtedness is equally as valid, and does not destroy the negotiability of the note.

3. Where a collateral note provided that the collateral might be sold without notice, at public or private sale, and upon default in the payment thereof the collateral was sold by the holder after a letter had been written notifying the pledgor of the contemplated sale, which in the ordinary course of business would have been received in time to enable the pledgor to protect the collateral, the pledgor was in no position to complain that the letter was not properly addressed especially where it appeared that it had been addressed as other communications directed to and received by the pledgor had been addressed.

4. In an action on a promissory note executed and endorsed by a corporation, providing "Four months after date, for value received, we promise to pay to the order of ourselves four thousand dollars having deposited herewith as collateral security for payment of this or any other liability or liabilities of the undersigned to the holder hereof, now due or to become due, or that may be hereafter contracted, the following property, viz: Four thousand dollars par value of bonds of High Grade Pet. Products Co.," it appeared that the note was made and endorsed by defendant and negotiated to plaintiff: that upon default in the payment of the note the collateral was sold for $300, after public notice of the sale had been given by advertisement for several days, and after a letter notifying defendant of the contemplated sale had been mailed. Defendant offered to prove that it was an accommodation maker, that its act in making and endorsing the note was ultra vires and contended that the note was not negotiable. There was no allegation of any fraud in connection with the execution of the note or use of it afterward. The trial judge directed a verdict for plaintiff upon which judgment was entered. *Held,* no error.

Reargued Oct. 10, 1917.   Appeal, No. 162, Oct. T., 1916, by defendant, from judgment of C. P. Allegheny Co., Oct. T., 1914, No. 1957, on verdict for plaintiff, in case of The Empire National Bank of Clarksburg, W. Va., a corporation, v. High Grade Oil Refining Company, a corporation.   Before MESTREZAT, POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ.   Affirmed.

Assumpsit on a promissory note.

EVANS, J., filed the following opinion:

The plaintiff brought suit on a promissory note, of which the following is a copy:

"$4,000            Pittsburgh, Pa., Feb. 16, 1914.

"Four months after date, for value received, we promise to pay to the order of ourselves Four Thousand......
........Dollars having deposited herewith as collateral security for payment of this or any other liability or liabilities of the undersigned to the holder hereof, now due or to become due, or that may be hereafter contracted. the following property, viz:

"Four thousand dollars par value of bonds of High

Grade Pet. Products Co., with the further right to call for additional security, and, on failure to respond, this obligation shall be deemed to be due and payable without demand or notice, with full power and authority to the holder hereof to sell and assign and deliver the whole of the above mentioned security, or any part thereof, or any substitute thereof, or any addition thereto, or any other property at any time given unto or left in possession of the holder hereof, at any brokers' board, or at public or private sale, at the option of the holder hereof on the nonperformance of this promise, or the nonpayment of any of the liabilities above mentioned, at any time or times hereafter, without demand, advertisement or notice, and with the right to purchase as any other bidder at any public sale thereof, held by virtue hereof. And after deducting all legal or other costs and expenses for collection, sale and delivery, to apply the residue of the proceeds of such sale or sales so to be made, to pay any, either or all of said above-mentioned liabilities, as the holder hereof shall deem proper, returning the overplus to the undersigned.

"Signed and endorsed by the High Grade Oil Refining Company, and guaranteed by Christopher Magee, Jr., by the following contract of guaranty:

"For value received, I hereby guarantee payment of the within note, with interest, and waive demand, protest, and notice of protest on the same."

The defendant offered to prove that it was an accommodation maker, and that the act of signing and endorsing this note and issuing the same was ultra vires as to the High Grade Oil Refining Company, and insists on the relevancy of that proof for the reason that the note in question was not a negotiable note; and further alleges that the sale of the collateral was made in an illegal manner, and that the value of the collateral was sufficient to cancel the obligation. This note became due on the 16th of June, 1915, and on the 25th of June the plaintiff in this case, who was the holder of the note at the time,

agreed with Christopher Magee, Jr., to extend the time of payment ten days, which would have extended the time until the 5th of July. On the 19th of June the plaintiffs wrote the defendant, addressed to the Keystone Building, Pittsburgh, Pa., notifying it of the maturity of the note and its nonpayment, asking for payment of same, and stating that if "I do not hear from you within five days I will be obliged to sell the collateral and proceed to collect whatever amount remains due after the collateral is sold." Practically the same notice was sent the same day to Christopher Magee, the guarantor of the note.

The defendant acknowledged receipt of the letter of June 19th by letter of June 24th, in which they asked for time and asked for the privilege of paying ten per cent. and the renewal of the note for sixty days. On the 25th of June, the plaintiff wrote the defendant as follows:

"Replying to your letter of the 24th inst., desire to say that it will not be satisfactory for us to accept ten per cent. reduction and sixty days renewal of this note. We had a positive understanding with the broker from whom we purchased this note that it would be paid at maturity. We will hold the matter in abeyance for a few days and hope that you will let us have check for the amount of the note, accrued interest and protest fees.

"If we do not hear from you within a reasonable length of time, we will be obliged to take steps to collect it."

On July 6th, the plaintiff wrote to the defendant:

"I have not heard from you in reply to my letter of June 25th. If the $4,000 note which we hold of yours is not promptly paid, we will proceed to sell the collateral and place the note in the hands of our attorney for collection for the amount remaining due in case the collateral does not sell for a sufficient sum to pay the note.

"Hoping to hear from you by return mail, I am,

"Very truly yours,

"(Signed) VIRGIL L. HIGHLAND.

"*President.*"

On the same day the plaintiff wrote Christopher Magee, to whom the plaintiff had written on June 24th, extending the time of payment for ten days:

"I have not heard from you in answer to my letter of June 25th. The ten days extended to you at that time within which you were to take up the High Grade Oil Refining Company note have expired.

"Will you please send us check by return mail or we will be obliged to dispose of the collateral and place the note in the hands of our attorney for collection. Please give this matter your prompt attention and oblige."

On the 9th of July the plaintiff sold the collateral at the court house in Clarksburg, W. Va., to M. G. Sperry, who was at that time a director in the plaintiff bank and its general counsel. The bonds were sold for $300. Notice of the proposed sale of the bonds had been posted for several days on the bulletin board in the court house of Clarksburg, W. Va.

It is alleged by the defendant that the High Grade Oil Refining Company had no office in the Keystone Building at Pittsburgh, Pa., and did not receive the letter of July 6th until July 8th. It will be observed, however, that in its reply to the plaintiff's letter of June 19th the defendant did not correct any mistake in the address and did not complain of any delay in receiving the plaintiff's letter.

The defendant contends that this note was not a negotiable note for the reason that the note contains an independent contract by which the holder has the right to call for additional security, and, on the failure to respond, the obligation shall be deemed to be due and payable, and that as this right to demand additional security is purely within the will of the holder, makes the time of payment uncertain and destroys the negotiability of the note. I understand from the argument of counsel that he would concede the negotiability of the note if the right to call for additional security were given on condition that the market value of the security given as col-

lateral had decreased. I see no distinction between a note giving to the holder the right to demand additional security in case the market value of the security pledged decreases and a note of the character of the one at bar. In the former case the holder of the note must be the judge as to whether the market value of the security has decreased or not, and therefore the right to demand additional security in that case, as well as in this one, depends entirely upon the judgment of the holder of the note.

But it will be observed that it is not simply the will of the holder of the note that makes this note payable; it is the failure of the maker to respond with additional security on demand, and such a failure on the part of the maker of the note to perform an obligation on his part has always been held to be the happening of such an event as will make the time certain at which the note is to mature. There is in this note a fixed time at which it matures if it does mature earlier, and in my opinion the clause in question does not render the time of maturity so uncertain as to render the note nonnegotiable.

Another objection is made to the note in regard to the fixing of the time at which the collateral may be sold, and emphasis is placed upon the alleged fact that the note gives to the holder the right to sell the collateral "at any time or times hereafter." The provision is as follows:

"With full power and authority to the hólder hereof to sell and assign and deliver the whole of the above-mentioned security, or any part thereof, or any substitute thereof, or any addition thereto, or any other property at anytime given unto or left in possession of the holder hereof, at any brokers' board, or at public or private sale, at the option of the holder hereof on the nonperformance of this promise, or the nonpayment of any of the liabilities above mentioned, at any time or times hereafter."

Unquestionably the "any time or times hereafter" is controlled by the event which must happen, namely, the

nonperformance of this promise or the nonpayment of any of the liabilities above mentioned. Now, it has been held by the courts of this State that a contract making the collateral subject to the payment of other indebtedness besides the one for which the collateral was particularly pledged, is a valid agreement, and therefore it must follow that the right to sell the collateral for the nonpayment of the other indebtedness is equally as valid and does not destroy the negotiability of the note. Notes with collateral contracts identical with this have been sustained so often by the courts of this State that I take it it is too late now to urge that such contracts destroy the negotiability of the note.

The plaintiff further alleges that the sale of the security was not made in good faith, and therefore claimed the right to offer evidence as to the value of the collateral at the time of the sale. That the plaintiff could have sold the collateral on the maturity of the note without notice at public or private sale, and could have purchased the collateral itself, has been affirmed in the case of Colonial Trust Co. v. Central Trust Co., 243 Pa. 268.

It is claimed that in its letter of July 6th the plaintiff should have notified the defendant of the date at which it purposed selling the collateral. The letter was written on July 6th, and in the ordinary course would have been received by the defendant on July 7th. In that the defendant was notified that the collateral would be sold unless the amount of the note was made promptly, and a request that that promptness be by return mail. Certainly, if there was no obligation on the part of the plaintiff to give any notice, the fact that they gave notice, which in the ordinary operation of the mails would have been sufficient time for the defendant to have paid the note and stopped the sale, the plaintiff did all that could be required of them. It is urged that the defendant not having an office at the Keystone Building in Pittsburgh did not receive the letter until July 8th, when it was forwarded to its office in Butler, Pa. But, as I stated be-

fore, the plaintiff had communicated prior to this with the defendant, directing its letters to the Keystone Building in Pittsburgh, and no complaint had been made by the defendant and no directions to send future letters to Butler, Pa.

The defendant further claims that it should have been permitted to prove the circumstances of the giving of the note, which would have cast the burden upon the plaintiff to prove that it received the note for a valuable consideration in due course and before maturity, and cites Second National Bank of Pittsburgh v. Hoffman, 229 Pa. 429, as authority for their position. The Act of May 16, 1901, P. L. 194, provides in its 59th section that: "Every holder is deemed, prima facie, to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course." The 55th section of that act defines what is a defective title within the meaning of section 59 : "The title of a person who negotiates an instrument is defective, within the meaning of this act, when he obtained the instrument or any signature thereto by fraud, duress or force, and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith or under such circumstances as amount to a fraud."

The allegations of the affidavit of defense in no place allege that the title of the holder of the note in question was defective within the meaning of the 55th Section of the Act of 1901, and that is sufficient answer to the offer of proof, the objection to which was sustained. The defendant itself was the only holder of this note prior to its discount by the plaintiff. The note was made to the order of itself, endorsed by the defendant, delivered to a broker by the name of Snyder for the purpose of having it negotiated. Snyder was not the holder; he was the agent of the defendant in having the note dis-

counted. There is no allegation that there was any fraud in connection with the execution of this note or the use of it afterwards.

I see no reason to disturb the verdict rendered in this case and, therefore, the motion for new trial is refused.

Verdict for plaintiff for $3,011.07 and judgment thereon. Defendant appealed.

*Errors assigned* were rulings on evidence.

*J. A. Beck,* with him *L. P. Litzinger* and *McKee, Mitchell & Alter,* for appellant.

*A. Leo Weil,* with him *L. Pearson Scott,* of *Weil & Thorp,* for appellee.

PER CURIAM, February 11, 1918:

The judgment in this case is affirmed by a majority of the court on the opinion of the court below directing it to be entered.