## ASHCRAFT v. BREAM.
### No. 2335.

District Court, M. D. Pennsylvania.
Aug. 18, 1932.

See, also, 51 F.(2d) 301.

Henry H. Cole, of Tampa, Fla., Pepper, Bodine, Stokes & Schoch, of Philadelphia, Pa., and Knapp, O'Malley, Hill & Harris, of Scranton, Pa., for plaintiff.

Edwin D. Strite, of Chambersburg, Pa., and Paul G. Smith, of Harrisburg, Pa., for defendant.

JOHNSON, District Judge.

This is an action in assumpsit originally instituted by E. H. Ashcraft, receiver of the Seminole County Bank of the state of Florida to recover from the defendant $42,325, with interest and attorney's fees claimed to be due on three promissory notes made by D. M. Bream, defendant, to H. S. Long, trustee. After suit was started, W. H. Tunnicliffe, liquidator, was substituted in place of E. H. Ashcraft, receiver.

Following is a copy of one of the notes:
"$13,333.33     Sanford, Florida,
          Feby. 19th, 1926.
"On or before one year next after date, I promise to pay to Henry S. Long, as trustee, or order, thirteen thousand three hundred thirty three and 33/100 dollars. Negotiable and payable at Seminole County Bank, Sanford, Florida, with interest after date at the rate of eight per cent. per annum until paid, for value received, and if not paid at maturity this note may be placed in the hands of an attorney at law for collection; and in that event, it is agreed and promised by the makers and endorsers severally to pay an ad--

ditional sum of ten per cent. of the principal hereof for attorney's fees, having deposited with the said payee as collateral security for the payment of this note and any notes given in extension or renewal thereof and as security for payment of any other liability or liabilities of the undersigned to said payee, whether now existing or hereafter arising, the following property, viz.: ten (10) shares of the Common Capital Stock of Wynnewood Properties, Inc., evidenced by stock certificate No. 8. And should said payee, or the holder hereof, hereafter consider that the market value of said securities has declined or should said securities for any reason become unsatisfactory to said payee or the holder hereof, the undersigned hereby agrees to make payment on account of this obligation satisfactory to said payee or to the holder hereof, or to deliver to said payee or holder hereof additional securities to the satisfaction of the payee or the holder hereof. And for any other liabilities to said payee, whether due or not due or hereafter arising, the undersigned also gives to said payee a lien upon all property and securities pledged with or left in possession of said payee by the undersigned. For value received undersigned further agrees that upon the non-performance of this promise to pay or upon the bankruptcy or insolvency of the undersigned, or upon the non-payment of any of the liabilities of the undersigned to said payee, or upon failure of undersigned within three days from mailing of notice addressed to the undersigned, at his address endorsed at the foot of this note or if not so endorsed then to his last known address, to make satisfactory payment on account or to furnish additional securities satisfactory to said payee or to holder hereof in case of decline as aforesaid, then and in either such case this note and all other obligations and liabilities of the undersigned to said payee and any and all of them, at the option of said payee, shall forthwith become due and payable without further demand or notice; and said payee or the holder hereof shall have full power and authority to sell, assign and deliver at the expenses of the undersigned the whole or any part of the above mentioned property and securities or of any substitutions therefor or of any additions thereto, at public or private sale, at option of said payee or the holder hereof without demand, advertisement or notice of any kind, which are hereby expressly waived in respect to any and such methods of sale. And at such sale the said payee or his agents or the holder hereof may become the purchaser of the whole or any part of the said securities, free from

any right of redemption by undersigned, which is hereby expressly waived and released. In case of sale from any cause, after deducting all legal and other costs of collection, sale and delivery of said property, including attorney's fees as hereinbefore provided, the said payee of the holder hereof may apply the residue of the proceeds of the sale or sales so made to pay this note, and then to pay any and all of the liabilities of the undersigned to said payee, whether due or not due or hereafter arising, as said payee shall determine, making proper rebate for interest on liabilities not due, returning over-plus, if any, to the undersigned; and the undersigned also agrees that the exercise or omission to exercise by said payee or the holder hereof, of any of the rights and privileges hereby conferred upon said payee or the holder hereof, shall not waive or effect any other or subsequent right to exercise same. And the undersigned also agrees to be and remain liable to said payee or to the holder hereof for any deficiency after such sale or sales so made, together with interest thereon at the rate of ten per cent. per annum until the same is fully paid. All makers, endorsers and other parties liable hereon severally waive presentment, protest and notice of dishonor.

"D. M. Bream [Seal]
"——————— [Seal]
"——————— [Seal]
"No. ——— Due ———.
"P. O. Address ——— Florida.
"Endorsement [Signed] for collection and credit of account of H. S. Long, trustee, H. S. Long, trustee. 11/24/26. Paid 875."

The other two notes are exactly the same as the one quoted, except as to the amounts and times during which they run.

■■■■ To the plaintiff's statement of claim, the defendant filed his amended affidavit of defense raising questions of law as follows: "As to the several notes sued upon, referred to in plaintiff's statement and copies marked 'Exhibits A, B, and C,' it appears from the plaintiff's statement and the several copies of the alleged notes referred to that neither plaintiff receiver nor the Seminole County Bank has the right to bring, maintain and prosecute this action in its own name because it appears from the plaintiff's statement that the said respective notes are not negotiable instruments and, for greater particularity, the defendant avers that from the plaintiff's statement and copies of the several notes filed it appears:

"(a) That the notes do not respectively

contain an unconditional promise or order to pay a sum certain in money.

"(b) That the notes are not payable at a fixed or determinable future time.

"(c) That the notes contain respectively a promise or promises to do acts in addition to the payment of money.

"(d) That the notes respectively contain a provision authorizing the sale of collateral before maturity thereof.

"(e) That the said notes respectively give to the holder thereof the election to require something to be done by the maker in lieu of the payment of money."

The legal question raised by the amended affidavit of defense is whether the notes in suit are negotiable instruments within the meaning of the Negotiable Instruments Law of Florida. The defendant contends that the notes are not negotiable; that the bank was not a holder in due course and cannot sue in its own name, but must sue in the name of the payee, H. S. Long, trustee, to the use of the Seminole County Bank; and that since Long took the notes as trustee, subject to the terms of the trust, it could only acquire by assignment the right of the trustee.

The Negotiable Instruments Law of Florida (Comp. Gen. Laws Fla. 1927, § 6760 et seq.) is exactly the same as that of Pennsylvania, Act of May 16, 1901, P. L. 194 (56 PS § 1 et seq.).

The objection to the negotiability of the notes raised in points b, c, d, and e are without merit; the questions therein raised have been decided against the defendant's contention here by our courts of last resort. Chicago Rwy. Equipment Co. v. Merchants' Bank, 136 U. S. 268, 10 S. Ct. 999, 34 L. Ed. 349; Empire National Bank of Clarksburg, W. Va., v. High Grade Oil Ref. Co., 260 Pa. 255, 103 A. 602.

█ The first point (a) raised against the negotiability of the notes that they "do not respectively contain an unconditional promise or order to pay a sum certain in money" presents a more serious question. The notes provide for the payment of "interest after date at the rate of 8 per cent. per annum until paid." They further provide for the sale of certain collateral securities on failure to meet certain requirements as to the collateral, and that the maker shall remain liable to the payee or holder of the notes for any deficiency after such sale, together with interest thereon at the rate of 10 per cent. per annum until the same are fully paid. In other words, the notes provide for the payment of interest at 8 per cent. per annum until they are paid, and at the same time they provide for the payment of 10 per cent. on any deficiency resulting after the sale of the collateral security until the notes are paid. The notes contain two irreconcilable clauses concerning the payment of interest; one for the payment of interest at the rate of 8 per cent. per annum until the notes are paid, whether before or after maturity; and the other for the payment of interest at the rate of 10 per cent. per annum on any deficiency remaining due on the notes after the maturity of the notes through failure to meet certain requirements as to collateral security. The notes do not provide for the payment of a sum certain in money and, therefore, are not negotiable.

In the case of the First National Bank of Miami, Fla., v. Bosler, 297 Pa. 353, 147 A. 74, it was held by the Supreme Court of Pennsylvania that: "A note which provides for the payment of a stated sum with interest, is not a negotiable instrument under the Negotiable Instruments Act of May 16, 1901, P. L. 194 [56 PS § 1 et seq.], unless it clearly appears, from the note itself, that at any given date the principal and interest will always aggregate a sum certain.

"A note which says in one place that the principal is payable 'with interest thereon at the rate of eight per cent per annum from date until fully paid,' and in another place that 'deferred payments are to bear interest from maturity at ten per cent per annum,' is not a negotiable instrument."

Mr. Justice Simpson, in delivering the opinion of the court said:

"The First National Bank of Miami, Florida, brought suit, in its own name, upon three notes; the trial judge, being of opinion that they were not negotiable instruments, proffered leave to amend, so that the suit would be in the name of the payee to plaintiff's use; the offer was rejected; a nonsuit was entered which the court in banc refused to set aside; and plaintiff now appeals. The judgment is right.

"The first note, which was duly signed by defendants, is as follows:

'$2187.50      Miami, Florida, March 16, 1925

' *  *  *  On or before eighteen months after date, for value received, I promise to pay to the order of Shoreland Company $2,187.50 at its office in Miami, Florida, with interest thereon at the rate of eight per cent per annum from date until fully paid. Interest payable semiannually. The maker and endorser of this note further agree to waive demand, notice of non-payment and protest;

and in case suit shall be brought for the collection hereof, or the same has to be collected upon demand of an attorney, to pay reasonable attorney's fees for making such collection. Deferred payments are to bear interest from maturity at ten per cent per annum semiannually.'

"The other two notes are exactly the same as the one quoted, except that they are payable 24 and 30 months after date. We need consider but one of the three reasons urged as sustaining the action of the court below.

"Our Negotiable Instruments' Law of May 16, 1901, P. L. 194 (which, so far as appears, is exactly the same as that of Florida, where the notes were made payable), provides in section 1 that 'An instrument to be negotiable * * * must contain an unconditional promise or order to pay a sum certain in money'; and, in section 2, 'The sum payable is a sum certain, within the meaning of this act, although it is to be paid: (1) with interest. * * *' Taken together, these provisions mean that if the note provides for the payment of a principal sum and interest, it must clearly appear, from the note itself, that at any given date the two will always aggregate 'a sum certain'; otherwise, though the note might be for 'a sum certain' so far as concerns the principal, it might be uncertain as to interest, or vice versa, notwithstanding that the statute declares it must always 'contain an unconditional promise to pay a sum certain.'

"It will be observed that, in its first sentence, the note says the principal is payable 'with interest thereon at the rate of eight per cent per annum from date until fully paid,' which must mean whether before or after maturity. The last sentence says: 'Deferred payments are to bear interest from maturity at ten per cent per annum.' 'Deferred payments * * * from maturity' can only refer to all sums which the note says are to mature in the future, that is, postponed payments; and this is the meaning given in the Century Dictionary, Webster's New International Dictionary and Black's Law Dictionary. So, also, the words are construed in Goss Printing Press Co. v. Daily States Pub. Co., 109 La. 759 [33 So. 760], where the contract of purchase, out of which the note there in suit grew, stated 'All deferred payments to bear interest at 6 per cent per annum.' The 'deferred payments' were held to apply to all 'credit portions of the purchase price.'

"The present note has, therefore, two irreconcilable clauses, so far as concerns the interest payable after maturity; one spec-ified in the clause that the debt is to bear eight per cent interest until fully paid, whether before or after maturity, and the other which states that the debt is to bear interest at ten per cent per annum after maturity. It does not contain, therefore, as it 'must,' in order to be negotiable, 'an unconditional promise * * * to pay a sum certain.'

"Plaintiff has given us no authority supporting its contention on this question, and our own researches have disclosed none. We have found cases holding that if interest is provided for, but no rate is stated, the legal rate will be presumed to have been intended, and certainty as to the amount to be paid will result. So, also, we have found others which say that a sum certain obtains, if one rate of interest is charged until maturity and a different rate thereafter. Under these latter cases, if the note in suit had said that interest was to be payable 'at the rate of eight per cent per annum from date until [maturity, not until] fully paid [as it in fact says] * * * deferred payments to bear interest from maturity at ten per cent per annum,' it would have been negotiable. The uncertainty pointed out makes it nonnegotiable, however.

"Our own investigation has disclosed but three clearly relevant cases, and they all lead to the conclusion that such a note as this is not negotiable. In Davis v. Brady, 17 S. D. 511 [97 N. W. 719], the note was for $400 'with interest from date until fully paid at the rate of ten per cent per annum, payable annually on principal and all overdue unpaid interest. If the said interest is not paid when due, it becomes part of the principal and draws interest at twelve per cent per annum until paid.' It will be noticed that the language there is substantially the same as here. The note was held to be nonnegotiable. In Story v. Lamb, 52 Mich. 525 [18 N. W. 248], the court reached the same conclusion, where the body of the note provided that there should be payable to John A. Lamb $150 with ten per cent interest, and, at the time of delivery, he signed a subjoined clause stating that 'If this note is paid within one year no interest to be paid.' So, too, a note payable 'with interest the same as savings banks pay,' was held not to be negotiable, in Whitewell v. Winslow, 134 Mass. 343. The foregoing cases were not decided under the Uniform Negotiable Instruments Law, but, on the point referred to, the law was not altered by that statute. Under it, we have found no cases either for or against our conclusion herein.

"The judgment of the court below is affirmed."

The opinion of Mr. Justice Simpson is so full and clear and so fully decides the question raised in the present case that it is herein quoted in full.

The affidavit of defense raising questions of law, that the notes in suit are not negotiable for the reason that they did not contain an unconditional promise to pay a sum certain in money, is sustained and the plaintiff is allowed twenty days from this date to amend his statement of claim so that suit will be brought in the name of the payee to plaintiff's use; otherwise, judgment will be entered for the defendant.