### FREY *v.* FARMERS & MECHANICS BANK.

1. Pledges—Mortgages as Security—Assignment.
   Bank became pledgee when mortgagees assigned mortgage to it as security for loan to them.

2. Same — Mortgages — Condemnation Proceedings — Duty of Pledgee.
   Bank, as pledgee of mortgage as security for loan to mortgagees, came under duty as trustee to protect pledgor's interests in condemnation proceedings affecting the mortgaged property and to notify them of such proceeding.

3. Same—Mortgages—Waiver of Pledgee's Negligence.
   Mortgagees' knowledge of pendency of condemnation proceedings affecting property subject to mortgage, indorsement of pledgee's share of award on mortgage assigned to pledgee as security for personal note, execution of new note for balance due, payment of interest thereon and renewal thereof *held*, to constitute a waiver of any neglect or failure on the part of pledgee to protect mortgagees' security.

4. Same—Purchase by Pledgee—Statutes.
   While statute respecting sale of pledged property is not construed as giving pledgee right to purchase, such right may be exercised where provided for in contract of pledge (2 Comp. Laws 1929, § 9561).

5. Same—Purchase by Pledgee—Contract—Passing Title.
   Sale of pledged mortgage to pledgee at time and place of which pledgors had due notice *held*, to pass title to pledgee when it made entry on its records to that effect, where contract of pledge provided for pledgee's purchase, pledgors or other bidders were not present, and no complaint is made of fraud or that security was not purchased at its then fair value (2 Comp. Laws 1929, § 9561).

6. Evidence—Judicial Notice—Depreciation of Real Estate Securities.
   Supreme Court takes judicial notice of the fact that real estate securities had greatly depreciated in value by December 5, 1931.

Appeal from Washtenaw; Sample (George W.), J. Submitted June 4, 1935. (Docket No. 11, Calendar No. 37,881.)   Decided October 30, 1935.

Bill by William E. Frey and wife against Farmers & Mechanics Bank of Ann Arbor, Michigan, for an accounting, cancellation of note, to compel the execution of a deed and for alternative relief. Bill dismissed. Plaintiffs appeal. Affirmed.

*Benjamin & Yoedicke* (*Harry H. Platt,* of counsel), for plaintiff.

*Burke & Burke,* for defendant.

Nelson Sharpe, J.   On May 22, 1925, the plaintiffs sold 80 acres of land, owned by them in the county of Washtenaw, to Alvin H. Pommerening and his wife, and Max A. Blaess and his wife, for the sum of $16,000. The grantees assumed a mortgage on the land for $6,000, and gave the plaintiffs a promissory note for $10,000, secured by a mortgage on 25.26 acres of other land in said county, owned by them.

On October 12, 1925, the plaintiffs obtained a loan in the sum of $8,470 from the defendant, Farmers & Mechanics Bank, evidenced by a promissory note, to secure which they assigned to the bank the note and mortgage above referred to. The mortgagors made certain payments of interest to the bank, which were applied on its loan to the plaintiffs.

On December 13, 1928, Pommerening and his wife, who were then the owners of the 25.26 acres, gave a second mortgage thereon to the State Savings Bank of Ann Arbor in the sum of $7,000.

On or about June 5, 1929, the people of the State of Michigan, for the use and benefit of the Regents of the University, commenced proceedings to con-

demn 10.553 acres of the 25.26 acre tract, and the two banks which held the mortgages were made parties thereto. An award was made in the sum of $11,058, which was divided by the jury equally between the owner and each of the banks. Pommerening appealed therefrom to this court and the award was sustained. *People, for use and benefit of Regents of University of Michigan,* v. *Pommerening,* 250 Mich. 391.

On April 19, 1930, a cashier's check for $4,018.27, the amount payable to the Farmers & Mechanics Bank, under the award, with interest thereon, was issued by the bank and indorsed by the plaintiff, William E. Frey, and credited upon the note given by himself and his wife to the bank. The past due interest on the $8,470 note was then computed and, in order to reduce the indebtedness to $4,700, the plaintiffs paid the bank $14, and gave it a new note for that amount. A renewal thereof was afterwards given and the interest then due was paid thereon.

There was default in the payment of this note and, on November 16, 1931, the plaintiffs were notified in writing by the bank that the collateral pledged as security for its payment, being the note and assignment of the $10,000 mortgage, would be sold to the highest bidder at private sale at the offices of the bank on December 5, 1931, at 10 o'clock in the forenoon. It is undisputed that no person got up in front of the bank on that day and offered the collateral for sale. The plaintiffs did not appear nor did any bidders, and the bank officials made an annotation in their records that it had purchased it for the amount then due on the renewal note.

On January 7, 1932, the bank proceeded to foreclose the mortgage by advertisement and became the purchaser at the sale had thereon. The period of redemption expired on April 23, 1933, and the

deed was then delivered to the bank and recorded by it.

On June 15, 1933, the plaintiffs filed the bill of complaint herein. The proceedings as above detailed were set forth but with an allegation that the officials of the Farmers & Mechanics Bank were negligent in not informing plaintiffs of the condemnation proceedings; that they were aware of the provisions in the mortgage that release of acreage could only be had on the payment of $800 per acre; and were chargeable with knowledge that, in view thereof, the award made was erroneous and unfair and that the bank should have appealed therefrom, or, if plaintiffs had been notified of the proceedings, they might have intervened and protected their rights, and that the note for $4,700 and the renewals thereof were secured by the false and fraudulent representations of the bank. In their prayer for relief they asked for an accounting, in which the defendant bank should be charged with all sums which it should have received in the condemnation proceedings; that the foreclosure proceedings be vacated and the bank be required to execute a deed to them of the property described therein, or, in the alternative, that their damages as fixed on the accounting be declared a lien thereon.

The defendant filed an answer denying the allegation of fraud and misrepresentation and alleging that all the proceedings taken were regular and binding on the plaintiffs. After the submission of proofs the trial court filed an opinion in which he said:

"I am unable to bring myself to believe that the plaintiff, William E. Frey, could have indorsed the check for the one-third of the remuneration received from the condemnation of the lands in question without knowing the circumstances such as would estop

him from making his claim at this time against the bank.

"Also the power given by the plaintiff for sale and disposition of the mortgage in question at public or private sale seems to make it a matter without question that the defendant bank did nothing it was not directed to do by the plaintiff, William E. Frey, himself."

An order was entered dismissing the bill of complaint, from which plaintiffs prosecute this appeal.

By the assignment of the mortgage as security, the relation between the parties became that of pledgor and pledgee. A form of trust was thereby created, under which it became the duty of the defendant to protect the interests of the plaintiffs in any subsequent proceedings affecting the security. 21 R. C. L. p. 664; 49 C. J. p. 920. And when the condemnation proceedings were begun and the defendant was made a party thereto, it was not only its duty to protect the rights of the plaintiffs as mortgagees but also to notify them and thus afford them the opportunity to intervene in the proceedings if they desired to do so.

Mr. Frey, as a witness, admitted that he knew of the pendency of the condemnation proceedings and conversed with defendant's president relative thereto. After the award was made and confirmed by this court, he indorsed the cashier's check for the amount to be applied on the mortgage and on their note to the defendant and the plaintiffs then executed a new note for the balance due, and later paid the interest thereon and executed a renewal thereof. Their action in this respect cannot but be treated as a waiver of any neglect or failure on the part of the defendant to protect their rights in the condemnation proceedings. See *Truesdail* v. *Ward,* 24 Mich.

117; *Roth* v. *Rubert,* 176 Mich. 484; *Smith* v. *O'Dell,* 240 Mich. 185.

The note given by the plaintiffs to the defendant, and the renewals thereof, after stating the pledge of the collateral security, contained the following:

"I hereby authorize the sale of said security, at public or private sale, under Act No. 84, Legislature of Michigan, Session of 1899, on the non-performance of this promise, and said bank may become the purchaser thereof."

The title and first section of Act No. 84, Pub. Acts 1899 (2 Comp. Laws 1929, § 9561), read as follows:

"An act to provide for the public or private sale of stock, bonds, or other personal property pledged as collateral security for the payment of money or the performance of any obligation; and to authorize and empower the pledgee, his assigns, or his or their legal representatives, to purchase the property at such sale.   *   *   *

"SECTION 1.   When stock, bonds, or other personal property is pledged as collateral security for the payment of money or the performance of any obligation, and there has been a default in such payment or performance, such stock, bonds or other personal property may be sold to satisfy said debt or obligation at public sale, or at private sale, where the contract of pledge authorizes a private sale; but before a sale, ten days notice in writing thereof shall first be served on the pledgor or his legal representative, either personally or by mail addressed to said pledgor or his legal representative at his last place of residence."

The second section contains provisions for a public sale, if one be had, and is in no way here involved.

While the title to the act indicates an intent to provide therein that the pledgee may become the

purchaser at a private as well as a public sale of the security pledged, the section does not in terms so provide, and plaintiffs' counsel insist that the sale as made was therefore void. Without construing the statute as giving the defendant such right, it is apparent that it may be exercised when provided for in the contract of pledge.

In 21 R. C. L. p. 694, it is said:

"It is possible by agreement between the parties to authorize the pledgee to purchase the pledged property at a sale made by himself, and in some jurisdictions such purchase is authorized by statute."

The right of a pledgee to purchase when authorized to do so by the pledgor is considered at length in an annotation in 76 A. L. R. p. 716. The annotator said:

"Though a pledgee may not become the purchaser at a sale of the collateral, the courts are agreed that a provision in the pledge agreement authorizing the pledgee to purchase is valid; and such a purchase at a sale fairly conducted, without fraud, and in accordance with the provisions in the contract, will pass title to him in the same manner as if he were a third person purchaser."

In *Appleton* v. *Turnbull*, 84 Me. 72 (24 Atl. 592), the court held:

"A pledgor may lawfully stipulate that the pledgee may purchase, and this may be done at the time of making the pledge." (Syllabus.)

The next question presented is whether the sale was lawfully conducted and in a manner to pass title to the defendant. The plaintiffs, although duly notified of the time and place of the sale, did not appear, nor did they apparently make any effort to secure the attendance of a bidder thereat. When the time for the sale arrived there was no one present

except the officials of the defendant. It would have been but an idle ceremony for them to have publicly announced that the sale was open and to have invited bidders for the security. They simply entered in their records the fact that defendant became the purchaser at the amount due on plaintiffs' note.

In *Wilkes* v. *Allegan Fruit & Produce Co.*, 233 Mich. 215, this court sustained a private sale of pledged securities, without notice to the pledgor, where the contract so provided.

In *Winchester Rock & Brick Co.* v. *Murdough*, 233 Mass. 50, 54 (123 N. E. 344), the court said:

"The facts that the bonds were sold at the defendant's office in a town near Boston instead of through stockbrokers, and that there was no newspaper advertisement of the sale, and that there was only one person present other than the defendant and the auctioneer, in connection with all the other circumstances, are not enough to require a finding of want of good faith or of reasonable prudence in conducting the sale."

No complaint is made by counsel for the plaintiffs that the amount for which the defendant purchased the security pledged was not at that time the fair value thereof. We may take judicial notice that the value of real estate securities had greatly depreciated in value at the time the sale was made. It also appears that plaintiffs made no complaint that the defendant was guilty of any fraud or wrongdoing in its handling of the property pledged until they filed the bill of complaint herein, about 18 months after the sale was made.

The decree is affirmed, with costs to defendant.

This opinion was prepared and signed by the late Justice NELSON SHARPE before his death and is concurred in by the other Justices.