Snyder et ux., to use, *v.* Home Life Insurance Company of America, Appellant.

Argued December 1, 1937. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Alma H. Arnold,* with her *Arthur S. Arnold* and *John E. Malone,* for appellant.

*F. Lyman Windolph,* of *Windolph & Mueller,* for appellees.

OPINION BY MR. JUSTICE LINN, January 3, 1938:

Defendant appeals from judgment on a directed verdict for use-plaintiffs in an action to recover the surrender value of a policy of life insurance. The policy in the sum of $5,000.00 was issued to and on the life of Elwood S. Snyder in 1909; the beneficiary named was his wife, Flora H. Snyder, and the right to change the beneficiary was reserved. Snyder became indebted to the Lancaster Trust Company in the sum of $22,450.00 for which he made his demand collateral note. Among the collateral delivered was this $5,000.00 policy. He, as the insured and his wife as the beneficiary, executed and delivered to the Trust Company an assignment of all their right, title and interest in and to the policy. The Insurance Company recorded on the assignment, "Officially consented to and recorded subject to proof

of validity of assignment and insurable interest according to conditions and agreements in policy." The policy provides "After this policy has been in force three full years the owner, at any time prior to or within three months after any default, may surrender same and elect; 1st. To receive its total cash value . . ." With the exception of this insurance policy, all the collateral pledged had been converted into cash and credited on the principal of the note, leaving a balance due of $21,783.51 with interest. In 1935, when this suit was brought, the policy had a surrender value of $3,725.80, less an outstanding policy loan of $802.03, or a net of $2,923.77.

Plaintiffs did not aver and did not prove that notice was given to the insured that the use-plaintiffs would demand the cash surrender value.[1] The legal question, submitted for decision to the learned court below by both parties was, in their words, whether "the use-plaintiffs were legally the owners of the insurance policy at the time they" demanded payment.

Snyder and the bank stated their contract in writing. He authorized the holder of the note and the collateral "upon the nonpayment at maturity either of this note or the other indebtedness or liability aforesaid, to sell, [the collateral] either at public or private sale, without any previous demand or notice to me[2] and to apply the net proceeds, or so much thereof as may be required, after deducting costs of sale, to the payment of this note . . . And, at such sales as aforesaid the said holder or holders are expressly empowered to become the purchaser or purchasers, freed and discharged of any equity of redemption."

---

[1] The parties seem to have assumed that the insured was still living; at the oral argument it was stated that notice was not given to him because he could not be found.

[2] See *Jeanes's Appeal,* 116 Pa. 573, 11 A. 862; *DuBrutz v. Bank of Visalia (Cal.),* 87 P. 467; *Palmer v. Mutual Life Ins. Co.,* 77 N. Y. S. 869.

While the assignment of the policy was absolute on its face, the holder's right was qualified by the provisions of the collateral note. As has been said, the record shows that all the collateral except the policy had been exhausted and that the remaining indebtedness was in excess of the face of the policy. In the circumstances, we think that by the terms of the collateral agreement considered with the assignment, the bank became the owner of the policy within the terms of the provision authorizing the owner to surrender it and receive the net cash surrender value.

In *Entwistle v. Insurance Co.*, 202 Pa. 141, 51 A. 759, the policy was payable to the "wife or in the event of her prior death, to the children of the said insured." It provided for its conversion into cash "at the option of the holder" in certain circumstances. Plaintiff, on an assignment made by the insured and his wife but not joined in by the children, claimed the right to convert. Apparently no right to change the beneficiary was reserved. POTTER, J., said, "The provision that the policy may be converted into cash at the option of the holder does not change the relative rights of the parties. We agree entirely with the suggestion that 'holder' or 'holders,' as used in this connection, means those who in law are the owners of the policy, and are entitled to the rights and benefits which may accrue under it; in other words, all the beneficiaries; in the present case, not only the wife, but the children of the insured. If for any reason, prudence required the conversion of the policy into cash, a guardian would have no special difficulty in reasonably protecting the interest of his wards. But however that may be, it is manifest that the option can only be exercised by those having the full legal interest in the policy, or by their assignee. Neither the husband, nor the wife, nor both together had power to destroy the vested interest of the children in the policy.

428

"As the plaintiff in this case holds by assignment the interest of the wife only, payment of this claim would not discharge the company from liability under the policy. The interest of the children remains outstanding, and this interest would take all the benefits under the policy, in case of the prior death of the wife, and the survival by the children of the insured. The trial court was therefore right in directing a verdict for the defendant."

In the case before us, as has been said, every interest in the policy was transferred to the bank by the only parties interested. The collateral agreement authorized the bank to convert the chose in action into money and apply it to the debt. The direction to find for the plaintiff was right.

Judgment affirmed.