**Goldman v. Girard Life Insurance Co.**

*Francis B. Haas, Jr., McNees, Wallace & Nurick,* for plaintiff.

*George H. Hafer, Robert L. Rubendall, Hull, Leiby & Metzger,* for defendant.

NEELY, J., February 29, 1956.—This matter is before us on preliminary objections to plaintiffs' amended complaint in assumpsit. The amended complaint avers that Henry P. Goldman, the insured, took out two insurance policies with defendant. It is averred that by change of beneficiary, his wife, Edith A. Goldman, was named beneficiary, and upon her death, or should she predecease the insured, his daughters, Ryca Peiser Goldman and Henrietta Goldman, were designated beneficiaries, and in certain contingencies the unborn children of his daughters were named as contingent beneficiaries; these beneficiaries having been irrevocably designated.

The change of beneficiary was dated December 29, 1942, and endorsed on the policies on December 31, 1942. On December 30, 1942, the insured made an assignment of the policies to Edith A. Goldman, his wife, with the stipulation that such assignment does not "change or revoke the beneficiary designation". This assignment was dated December 30, 1942, and was received and filed at the home office of defendant on December 31, 1942, on the same day the irrevocable designation of the beneficiaries was endorsed on the policies.

Upon the death of Edith A. Goldman, plaintiff, the insured in the policies, demanded the cash surrender

value of the policies, without obtaining the consent of the irrevocably designated beneficiaries to such cash surrender, according to the averments in the amended complaint. This suit was instituted by complaint to recover this cash surrender value. By the amended complaint, Henry P. Goldman sues for the cash surrender value of the policies as the executor of the assignee, that is, as the executor of Edith A. Goldman, on the theory that she was entitled to that cash surrender value, and, therefore, he had the right to bring the suit as her personal representative; in the alternative, Henry P. Goldman also brings suit individually and in his own right on the ground that, as the insured under the policies, he is entitled to the cash surrender value.

In its preliminary objections defendant objects that: (1) Ryca Goldman, Henrietta Goldman and their possible issue, by proper representatives, are indispensable parties who have not been joined; (2) the policies involved neither gave to the insured nor his assignee the right to surrender such policies for their cash surrender value without the consent of all irrevocably designated beneficiaries; (3) the so-called assignments of these policies dated December 30, 1942, must be deemed ineffective in the absence of the joinder of the irrevocably designated beneficiaries, namely, the said "Ryca Goldman, Henrietta Goldman and their possible issue, by proper representatives, . . .".

The dispositive issue in this case involves the basic question as to whether the insured or his assignee is entitled to receive the cash surrender value of these two life insurance policies where there were irrevocably designated beneficiaries who have not consented to the surrender of the policies for cash. A logical approach to the disposition of the preliminary objections would seem to us to require that this basic

question be decided, whereupon we can then give our attention, if it becomes necessary, to the effectiveness of the so-called assignments, and finally to the proposition as to whether or not there has been a non-joinder of indispensable parties. Defendant asks for judgment in its favor on the demurrer.

We adopt the statement of the question involved as set forth in plaintiffs' brief as follows: Where a life insurance policy provides that a cash value will be paid upon legal surrender thereof at the end of the third or any year thereafter, can the insured, or his assignee, surrender the policy and demand the cash value without the consent of irrevocably designated beneficiaries? The amended complaint avers that by an instrument dated January 16, 1950, and characterized as a "change of beneficiary and election" (apparently on a form provided by defendant), the insured, his wife and daughters made a rearrangement concerning the terms and conditions of the beneficiaries' interests, providing, inter alia, for certain installment payments. We have not considered it necessary to this decision to discuss the validity or effect of this rearrangement made subsequent to the irrevocable designation of beneficiaries on December 29 and 31, 1942, which subsequent rearrangement did not, in our judgment, disturb the vested nature of the interests of these irrevocably designated beneficiaries and could not affect the interests of the unborn children named as contingent beneficiaries.

Defendant contends that by change of beneficiary dated December 29, 1942, the daughters of plaintiff, namely, Ryca Peiser Goldman and Henrietta Goldman, were irrevocably designated as beneficiaries, and their unborn children were named as contingent beneficiaries in the two life insurance policies involved. It is the contention of defendant that where a beneficiary of a life insurance policy has been irrevocably

designated, the beneficiary has a vested interest in such policy, which cannot be divested by anything which the insured may do without the consent of that beneficiary. Therefore, defendant contends that the insured, or his assignee, in these two policies would have no right, without the consent of the irrevocable beneficiaries, to receive the cash surrender value of the policies, thereby divesting the vested interests of the said beneficiaries.

The change of beneficiary dated December 29, 1942, appears on its face to have been irrevocable. It also appears that this change was noted on the policies on December 31, 1942, and that on the same day defendant received and filed in its home office the assignment of the policies to Edith A. Goldman dated December 30, 1942. The question involved in this case, then, is simply this: Has the insured under these policies the right to receive the cash surrender value and cut off the interests of the irrevocably designated beneficiaries without their consent?

The general rule on this question is stated in several texts. In 45 C. J. S., Insurance, §455, pp. 109-110, it is said:

"Where the beneficiary has a vested interest in a life insurance policy, insured cannot, by surrendering the policy, cut off the rights of the beneficiary without his consent, unless permitted to do so by the terms of the contract, or unless the beneficiary consents to the surrender or joins therein. This rule is applicable to a paid-up policy, and to a policy containing a provision for a cash surrender value or other insurance on surrender of the policy. Where the policy does not reserve to insured the right to change the beneficiary, the latter is deemed to have a vested interest in the policy precluding insured from surrender or cancellation thereof without the consent of the beneficiary."

And in 2 Couch Cyclopedia of Insurance Law, §333, pp. 990-992, it is stated as follows:

". . . it being a well-established rule of law that if the beneficiary, named as such in a policy or certificate insuring the life of another, has a vested interest in the contract of insurance, the insured cannot surrender the policy so as to defeat the rights of the beneficiary thereunder, without his consent, or the giving of authority therefor, and this although such surrender is acquiesced in by the insurer, . . ."

And in Goldin, The Law of Insurance in Pennsylvania, §833, pp. 705-706, it is stated:

". . . If the policy designates the beneficiary without making any provision for a change of beneficiary, the interest of the designated beneficiary is vested at the time the policy takes effect, and no action of the insured or insurer can destroy such interest although, of course, the insured may allow the policy to lapse or the insurer may defeat his right to recovery because of breach of condition of the policy. . . .

"Where the interest of the beneficiary is a vested one, the interest of the beneficiary may not be endangered in any way by the insured without the consent of such beneficiary."

Each of the policies involved here contains the following provision as to cash surrender value:

"After the payment of premiums for three or more years, in lieu of the paid-up and extended term insurance benefits, *upon legal surrender of the Policy* to the Company at the end of the third or any year thereafter or within thirty-one days from the due date of any premium or instalment thereof in default, a cash value will be paid, the amount of which shall be the full reserve of the Policy, . . ." (Italics supplied.)

This provision plaintiffs contend entitles the in-

sured, and his assignee in this case, to receive the cash surrender value of the two policies.

This question, that is, the right of an insured in a life insurance policy to receive the cash surrender value without the consent of the irrevocable beneficiaries, was directly adjudicated in Entwistle v. Travelers Insurance Company, 202 Pa. 141 (1902). In that case, a policy of insurance provided that the proceeds of the policy should be paid to the wife, if she survived her husband, or in the event of her prior death to their children, but if the insured survived the wife and children, then to his legal representatives. The policy contained this provision:

". . . 'this policy may be converted into cash at the option of the holder at any time after the expiration of fifteen years from the date hereof, for the amount indorsed on the back of this policy corresponding to the age . . . of the insured at the time of such conversion, provided that this policy shall have been first paid up by the payment of ten full annual premiums,' . . ."

After 10 full annual payments had been made, and when children were living, the husband and wife joined in an assignment of the policy, and the assignee demanded the cash balance on the ground that he was the holder of the policy. His demand was refused by the insurance company because the children had an interest, and it was held by the court that not only the insured's wife, but also his children, were beneficiaries under the policy, and that neither the husband nor the wife, nor both together, had power to destroy the vested interests of the children in the policy without their consent. It was held, accordingly, that the demand of the assignee was properly refused by the insurance company, because the wife's consent was not sufficient without the consent of the other bene-

ficiaries. The Supreme Court, in an opinion by Mr. Justice Potter, said, at page 144:

". . . The provision that the policy may be converted into cash at the option of the holder does not change the relative rights of the parties. We agree entirely with the suggestion that 'holder' or 'holders,' as used in this connection, means those who in law are the owners of the policy, and are entitled to the rights and benefits which may accrue under it; in other words, all the beneficiaries; in the present case, not only the wife, but the children of the insured. If for any reason, prudence required the conversion of the policy into cash, a guardian would have no special difficulty in reasonably protecting the interest of his wards. But however that may be, it is manifest that the option can only be exercised by those having the full legal interest in the policy, or by their assignee. Neither the husband, nor the wife, nor both together had power to destroy the vested interest of the children in the policy.

"As the plaintiff in this case holds by assignment the interest of the wife only, payment of this claim would not discharge the company from liability under the policy. The interest of the children remains outstanding, and this interest would take all the benefits under the policy, in case of the prior death of the wife, and the survival by the children of the insured. The trial court was therefore right in directing a verdict for the defendant."

In Snyder v. Home Life Insurance Company of America, 328 Pa. 424 (1938), the Supreme Court cited the decision in the Entwistle case with approval, and quoted in extenso therefrom in determining the correct legal rule to apply to the disposition of funds in the hands of an insurance company where every interest in the insurance policy had passed to the assignee. The court, in deciding in the Snyder case that

every interest in the policy had passed to the assignee, contrasted that case with the Entwistle case, wherein it appeared (in the latter case) that every interest had not passed to the assignee, because there were irrevocably named beneficiaries who did not join in the assignment, and whose rights could not have been divested by the assignment without the consent of these beneficiaries.

We cannot find that the Supreme Court has altered the views which it has expressed in the Entwistle case, in which there was directly involved the question of the right of an owner or his assignee to recover the cash surrender value of a life insurance policy without the consent of the irrevocably designated beneficiaries. It was held in the Entwistle case, and the decision was approved in the Snyder case, supra, that there was no such right where there was a failure on the part of the beneficiaries having vested interests to give their consent, either to the assignment or the conversion of the proceeds of an insurance policy into cash. It is our conclusion that these authorities clearly state as a well-established rule of law that where beneficiaries of a life insurance policy have been irrevocably designated, they have a vested interest therein which cannot be divested by the insured without their consent, unless the express provisions of the policy provide otherwise. The basic concept of this rule is well stated by the Circuit Court of Appeals in Pennsylvania Co. for Insurances on Lives and Granting Annuities v. Commissioner of Internal Revenue, 79 F. 2d 295 (3rd CCA, 1935), and we quote from the court's decision, at page 296, as follows:

"The late Judge McPherson, a former member of this circuit and a judge notable for his views on insurance law, while acting as a Pennsylvania state judge, in Jones v. Jones, 23 Pa. Co. Ct. R. 254, held: 'We think, however, that the weight of authority supports

the position that if A takes out a policy of insurance on his own life for the express benefit of B, and does not reserve the right to change the beneficiary he cannot afterwards do so without B's consent. He has created a trust in B's favor and although its peculiar nature may allow him to destroy it by refusing to pay the premium as it becomes due he cannot as long as the trust is alive pay C in the place of B unless the latter agrees to the change. Since the delivery of the policy to B is not necessary, nothing save continued payment of the premium remains to be done; the trust is otherwise complete, and the settlor has finally parted with the power to change the cestui que trust according to his own single will.' "

We believe this case last cited stands for the proposition that the irrevocable designation of a beneficiary of a life insurance policy is in the nature of an irrevocable trust in which the insured has the power to exercise those rights reserved to him in the policy, and the irrevocable beneficiaries take a vested interest which cannot be divested by the insured except as the policy provides. Such beneficiaries, in our judgment, have an ownership in a policy of life insurance and that ownership cannot be divested without their consent, unless the policy so provides. The policies in this case do not, in our judgment, contain any such provision.

The Appellate Court of Illinois in Waller v. Waller 341 Ill. App. 204, 93 N. E. 2d 113 (1950), held that the assignee of a policyholder could not surrender a life insurance policy for its cash value without the consent of all irrevocably designated beneficiaries. See also Wood v. Northwestern Mutual Life Insurance Company, 5 A. 2d 788 (1939, New Jersey).

It is our view that the policies in question do not reserve to the insured the right to surrender for cash the policies and to thereby divest the interests of these

beneficiaries without their consent. There is no language in the policies in question which indicates that such a right was reserved to the insured, and he took no steps to reserve any such right when he made the change of beneficiary which was endorsed on the policy on December 31, 1942, and dated December 29, 1942.

Both the policies involved herein provide that upon "legal surrender of the Policy . . . a cash value will be paid, . . .". "Legal surrender" is a significant term. In our judgment, it means a surrender that is good and sufficient in law to divest all interests in the policies upon payment of the cash value thereof. However, such interests could not be divested without the consent of those who have an ownership in the policies, including certainly the irrevocably designated beneficiaries.

In Minton v. Life Insurance Company, 19 Wash. Co. 75 (1938), the court of common pleas of that county, in interpreting the insurance policy there involved, which provided for policy loans "upon legal assignment of the same," concluded that the term "legal" means "sufficient in law," and that a legal assignment requires the joinder of the irrevocable beneficiary. We think the term "legal surrender" must have substantially the same meaning in these policies.

Plaintiffs here rely upon Knoche v. Mutual Life Insurance Co. of New York, 317 Pa. 370 (1934), and contend that this case supports the proposition that the insured under these policies of life insurance had the right to surrender the policies without the consent of the irrevocable beneficiaries. Plaintiffs rely upon the following language in the court's decision, at page 375:

"Turning to them (the terms of the policy), we find that the *insured could, without the consent of the*

*beneficiary,* surrender the policy to the company and receive its cash surrender value; could borrow on the policy from the company, and assign the policy to it as security. He could exercise any one of five options as to the surplus that might be apportioned to the policy when it was fully paid. These things were within the insured's sole and exclusive province, and the vested character of the beneficiary's interest was limited by and subject to the exercise by the insured of any of the rights so granted by the contract." (Italics supplied.)

The Supreme Court by this language interpreted the surrender of the policy for cash as a right secured to the insured under that policy, and stated that, therefore, a beneficiary with vested interests took subject to that right of surrender. The language on this point was not applicable or necessary to the decision of the exact point at issue in the Knoche case. The policy there provided that "this policy may be surrendered and the Company will pay therefor . . . (cash)." It does not specify by whom the policy could be surrendered. These provisions being interpreted by the Supreme Court as reserving the right of surrender in the insured for cash, the beneficiary under this language, even with a vested interest, was subject to the provisions of the policy.

The facts involved in the Knoche case are hereinafter set forth, so that it may be understood how the point at issue in that case differs from the issue in this proceeding. The insured in the Knoche case, prior to his death, surrendered a life insurance policy for the cash surrender value and had given to the insurance company his release. His wife, who was the irrevocably designated beneficiary of the policy, had made an assignment to the insurance company. At the time of the surrender of the policy, the insured was insane,

and following his death his wife then executed an assignment of her interest as beneficiary to the administrator of the insured's estate. The administrator brought an action for the proceeds of the policy on the theory that the surrender of the policy by the insured was ineffective because of his insanity, and that the wife, having assigned her interest as beneficiary to the administrator of the estate, such administrator, therefore, was entitled to the proceeds of the policy. The court sustained the contention that the insured's surrender was ineffective because of his insanity, but held that the assignment by the wife of her interest as beneficiary to the insurance company was valid, and that any further recovery, therefore, by herself or subsequent assignee, was precluded. Hence, the court concluded that the wife's later assignment to the estate of the insured was invalid, and that the insurance company was entitled to the benefit of the wife's first assignment. The question at issue in the Knoche case, then, actually was whether an irrevocably designated beneficiary could make a valid assignment, and was not whether the insured or his assignee could claim the cash surrender value of a life insurance policy without the joinder of the irrevocably designated beneficiaries.

In the Knoche case the policy had insured one Randall in the sum of $5,000, payable on his death to his wife. The insured had borrowed from the insurance company and had assigned the policy to the company as security. After this borrowing, when a premium became due, the cash value of the policy was paid to Randall and his wife, the wife having assigned or released her interest in the proceeds of the policy. Notwithstanding the payment of the cash surrender value, the wife, by a second assignment to the estate of the insured, sought to recover the proceeds of the policy on the ground of the insured's insanity.

If the language of the surrender provisions in the Knoche case is to be interpreted as reserving the right of surrender to the insured, this language should also be interpreted in the light of the Supreme Court's decision in the Entwistle case, which was cited with approval in Snyder v. Home Life Insurance Company of America, supra. Notwithstanding the interpretation placed by the Supreme Court upon the surrender provisions of the policy in the Knoche case, and which interpretation was not essential to the court's decision, we have noted that in the instant case there must be a *legal* surrender, and that such legal surrender means that it must be a surrender that is good and sufficient in law to release the vested interests of the irrevocably designated benficiaries, and such a surrender would require the consent of these beneficiaries.

Plaintiffs, in support of their contention that the insured or his assignee is entitled to receive the cash surrender value of these insurance policies without the consent of the irrevocable beneficiaries, rely on Schuberth v. Prudential Insurance Company of America, 86 Pa. Superior Ct. 80 (1925). The Superior Court there recognized the rule that an irrevocably designated beneficiary acquires a vested interest in the policy, but since the policy was there found to clearly give the insured the right to make a loan on the policy, it was held that the beneficiary's vested interest was subject to this term of the policy, and the granting of such a loan without the consent of the beneficiary was held to be proper.

In the Schuberth case, the Superior Court simply held that where a beneficiary is irrevocably designated, his interest nevertheless is subject to the terms of the policy, and where a life insurance policy contains a "cash loan" clause permitting the insured to

borrow on the policy, the consent of the beneficiary is not necessary in order that the insured may borrow. The policy in the Schuberth case contained this language: " '. . . the insured may borrow from the company the amount specified . . .' "

Our conclusion in this case is entirely consistent with the Superior Court's conclusion in the Schuberth case. The interest of the beneficiary in the Schuberth case was subject to the express provision of the policy that the insured had the right to borrow. Our interpretation of the policies involved here does not give the insured or his assignee the right to the cash surrender value without the consent of the irrevocable beneficiaries.

We are of the view, then, that because the consent of the irrevocably designated beneficiaries was not obtained to the surrender of these policies for cash, neither the insured nor his assignee is entitled to receive the cash surrender value, and defendant's demurrer to the amended complaint raising this question must be sustained. Defendant asks for judgment on its preliminary objections. Even though preliminary objections in the nature of a demurer are sustained, judgment should not be entered in favor of a defendant unless it appears that a plaintiff's complaint cannot be amended to state a good cause of action.

Here, plaintiffs' case as pleaded is fatally defective in that the amended complaint does not show the necessary consent. If plaintiffs can further amend their complaint so as to plead that consent, they should, of course, have an opportunity to do so.

For the foregoing reasons, therefore, the preliminary objections must be sustained and leave granted to plaintiffs to further amend their complaint, if they can do so, to show the necessary consent of the

irrevocably designated beneficiaries. Accordingly, therefore, we enter the following

*Order*

And now, February 29, 1956, the preliminary objections are sustained and leave is granted to plaintiffs to further amend their complaint in accordance with this opinion, within 20 days.