## Mansur *v.* Josephson, Appellant, et al.

Argued January 17, 1939.  Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Theodore Lane Bean,* for appellant.

*Maxwell Strawbridge,* with him *Harry M. Sablosky,* for appellee.

*Charles Townley Larzelere* and *A. Clarence Emery,* for additional defendants and appellees.

OPINION BY MR. JUSTICE SCHAFFER, March 22, 1939:

Notwithstanding the earnest argument of appellant's attorney, we are of opinion, after a careful reading of the record, that the court below did not abuse its discretion, in refusing to grant a new trial to his client, who was mulcted in damages by the jury's verdict, which found him guilty of negligence in operating his automobile.

Four motor vehicles were concerned in the machine melée which figures in this case, and the difficulty is in picking out, with certainty, the driver or drivers at fault. It is contended appellant was not to blame at all, and, in addition, as to him plaintiff herself was contributorily negligent.

This is the situation which the testimony presents: Three automobiles were traveling along the Ridge Pike toward an intersecting road, Hancock Boulevard, which is 60 feet wide. Appellant's car, a Buick, was in the lead. In his rear was a Chevrolet car and behind the Chevrolet was a coal truck. Plaintiff testified the cars were 20 to 25 feet apart, other witnesses stated they were about 50 to 60 feet apart. They were all on the proper right-hand side of the road; their speed was about 25

miles an hour. Coming in the opposite direction was another truck. In appellant's automobile with him were his wife and son, the latter in the uniform of a high school band. In the second car was its driver and plaintiff, who was a guest. In the coal truck was its driver and in the other truck its operator. As appellant approached the intersection of Hancock Boulevard, he observed a boy standing on the far side of it, also dressed in the school band uniform. He decided to stop and take this boy into his car. The pinch of the case is in what he then did. Plaintiff, the driver of the car in which she was seated, and the driver of the coal truck say that he made a sudden stop, too sudden to avoid a collision between the second car and his. Appellant, those riding in the car with him, and the boy who was to be picked up, say that he slowed down and did not stop suddenly. The second car, not moderating its speed, struck the left rear fender of appellant's car. It turned over and apparently was struck by the coal truck, which collided with the truck coming in the opposite direction. The second car caught fire and plaintiff, unable to get out of it, was severely burned. It is admitted by appellant that, when he decided to stop his car, he did not give a signal with his hand from the window of the car of his intention to do so. The Motor Vehicle Act provides: "The driver of any vehicle upon a highway, before starting, stopping or turning from a direct line, shall first see that such movement can be made in safety, and, . . . whenever the operation of any other vehicle following may be affected by such movement, shall give a signal, as required in this section, plainly visible to the driver of such other vehicle, of the intention to make such movement. The signal herein required shall be given either by means of the hand and arm, in the manner herein specified, or by an approved mechanical or electrical signal device": Act of May 1, 1929, P. L. 905, Sec. 1012, 75 PS Sec. 571. The reason given by appellant for not giving the signal by hand was that the day

was cold and the window of his car almost closed. He had an electric stop light on his automobile, which he relied upon to give notice of his stopping. He did not remember when he had last looked at it to see whether it was working, and it was so broken by the impact of the collision, that it could not be determined afterwards whether it was. Appellant testified he twice observed whether he could stop in safety by looking at his mirror and observing to the rear. Plaintiff testified that no signal of any kind was given from appellant's car.

Under the facts as they were shown, the question as to who is liable for plaintiff's injuries was for the jury: *Nold v. Higgins Lumber Co.*, 276 Pa. 195, 119 A. 919; *Smith v. Yellow Cab Co.*, 285 Pa. 229, 132 A. 124; *Cirquitella v. Callaghan, Inc.*, 331 Pa. 465, 200 A. 588; *Keller v. Keystone Furniture Co.*, 132 Pa. Superior Ct. 547, 1 A. (2d) 562.

The jury rendered a verdict for plaintiff against the driver of the first car, and verdicts in favor of the other defendants.

With much strength, appellant's counsel presents the argument that the overwhelming weight of the testimony as given by appellant, his wife, his son, and the boy who was to be picked up indicates that the collision, and the consequent injuries to plaintiff, were due to the negligence of the driver of the car in which she was riding, and that the real cause of the upsetting of that car was the striking of it by the coal truck, that but for this, it would not have overturned, and that the driver of the coal truck was manifestly not regardful of the situation in front of him. The weight of the evidence was for the court below *(Canon v. Penna. Trust Co.*, 305 Pa. 422, 158 A. 173; *O'Farrell v. Mawson*, 320 Pa. 316, 182 A. 538) which was satisfied that the proper verdict had been rendered. We are not convinced that the court abused its discretion in so deciding and refusing a new trial.

Judgments affirmed.