Thomas *v.* Waters Admr. et al., Appellants.

Argued May 23, 1944. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Hughes, JJ.

*James H. Beal, Jr.,* and *John W. Kephart,* with them *Philip N. Shettig,* of *Shettig & Swope,* and *Reed, Smith, Shaw & McClay,* for appellants.

*Morton Meyers,* of *Graham, Yost, Meyers & Graham, Patterson, Crawford, Arensberg & Dunn* and *George M. Spence,* for appellees.

OPINION BY MR. JUSTICE LINN, June 30, 1944:

This was a bill filed November 14, 1938, by a pledgor's executors against a pledgee's administrator and distributees, who had taken in kind, for an accounting on averments that the pledgor's debt was paid and his executors entitled to the return of shares of stock pledged and to sums received in excess of the debt. The case was tried on the merits in February, 1939, before the three judges of the court below in banc. Three questions were presented and considered: (1) Had the pledgee foreclosed the equity of redemption and become the owner of the collateral? (2) Had the court jurisdiction? (3) Was there laches? The judges differed among themselves concerning these issues, and dismissed the bill, one judge dissenting. Plaintiffs' appeal from the dismissal of the bill was sustained: *Thomas v. Waters,* 342 Pa. 125, 18 A. 2d 872.

When the record was returned to the court below, defendants, May 5, 1941, applied for a rule on plaintiffs ". . . to show cause why a further hearing should not be had for the purpose of taking further testimony and/or for the further opportunity for presenting and having considered the question of the sale of the pledge as raised by the defendants' answer . . ." The application was refused.

Defendants then filed accounts to which plaintiffs excepted. The case came on for trial. An adjudication and decree nisi were filed. Defendants excepted to the decree and the exceptions were heard by the court in banc and a final decree in accord with the prayers of the bill was entered, the three judges concurring. The decree, which was dated October 25, 1943, directed the return of the pledged stock and the payment of $106,-546.46. Defendants now appeal from that decree.

In reviewing the denial of defendants' application for a retrial of the foreclosure issue, we apply the general rules applied in considering motions for new trials. Was there abuse of discretion in refusing again to take

evidence on the issue referred to? In *Massachusetts B. & I. Co. v. Johnston and Harder, Inc.*, 343 Pa. 270, 277, 22 A. 2d 709, we said that if ". . . it is desirable that further testimony be taken in the interest of a more accurate adjudication, that is a matter within the discretion of the court below." We note that defendants did not allege that they had any after-acquired evidence not theretofore available which they desired to present and which would probably change the result theretofore appearing. No valid reason has been suggested why we should say there was abuse of discretion in denying the petition: compare *Mansur v. Josephson*, 333 Pa. 467, 470, 5 A. 2d 102; *Nicholson v. Feagley*, 339 Pa. 313, 316, 14 A. 2d 122; *Yago v. Pipicelli*, 343 Pa. 222, 22 A. 2d 699.

We next inquire what the record shows with respect to defendants' averment of sale and purchase of the collateral. The notes provided that on default ". . . power and authority are hereby given to the holder hereof to sell, assign and deliver the whole of the said securities . . . at any broker's board, or at public or private sale, at the option of said holder, without either demand, advertisement or notice of any kind, all of which are hereby expressly waived. At any such sale the holder hereof may himself or itself purchase the whole, or any part of the property sold, free from any right of redemption on the part of the undersigned which is hereby waived and released . . ." The issue was whether the pledgor's title was divested by sale of the collateral in foreclosure of the equity of redemption. This issue was tendered by defendants' answer which, inter alia, averred: "In addition to the failure to make payment as above recited, the said William R. Thomas [pledgor] had violated each and every of the other covenants, conditions and agreements contained in said notes (Exhibits 'A', 'B' and 'C', respectively), so that on the 28th day of October, 1931 the said John H. Waters was entitled by the terms of said notes to make private sale of the collateral pledged therewith, and to become the purchaser thereof.

"On the said 28th day of October 1931 said John H. Waters, under the power contained in said three notes, (Exhibits 'A', 'B' and 'C') made private sale of said collateral and became the purchaser thereof, free from any right of redemption on the part of the said William R. Thomas which was waived and released in said notes." It was an affirmative defense; unless they proved it, their defense failed: compare *McConville v. Ingham*, 268 Pa. 507, 518, 112 A. 85. Defendants needed the fact averred to support their claim that plaintiffs' equity of redemption was barred; without that fact, their title was that of pledgees.

Defendants contend that the pledgee, Waters, acted pursuant to the provision quoted above from the notes and, on October 28, 1931, as their answer avers, ". . . made private sale of said collateral and became the purchaser thereof." We all agree the evidence is not sufficient to support the fact averred. There is no direct evidence of sale and the circumstances relied on do not support the averment. Defendants refer to declarations, said to have been made by Mr. Waters, to persons not connected with plaintiffs, that he "had taken over" the collateral; that he referred to it as "securities that I was compelled to take over in order to secure myself . . ." that, as president of the bank, he wrote to the president of the Murphy Company asking for "a 50% payment on your note next week . . ." and in a postscript referred to "the Murphy Company stock which I hold." His secretary testified that he ". . . handed me an envelope in which were notes, [the Thomas notes] and he said it was a closed transaction and I should file the envelope in his compartment in the safe for posterity." Assuming, but not deciding their admissibility, it is clear that none of those statements shows that he had complied with the provision in the notes, foreclosed the equity of redemption and purchased the security. Taken literally, as they must be, the declarations are consistent with plaintiffs' contention and inconsistent with defendants' contention, because the

power to sell and to buy was not one to be executed by a taking: cf. *Huntingdon Valley Trust Co. v. Norristown-Penn Trust Co.,* 329 Pa. 356, 358, 196 A. 821; *Englert v. First Nat. Bank,* 333 Pa. 297, 5 A. 2d 136; *Finley v. Insurance Finance Co.,* 106 Pa. Superior Ct. 314, 319, 163 A. 325. While declarations of one in possession are received as verbal acts to aid the presumption from possession,[1] their evidential value, considered with the other circumstances, is for the trier of facts.

Prior to the date of the alleged sale, the notes had been entered in the pledgee's books as "bills receivable", where one would expect to find them recorded. It is significant, against the defendants, that the notes continued so to be entered after that date, though one would have expected, if defendants' contention is correct, that Mr. Waters would have had his books show the change brought about by his foreclosure of the pledgor's equity. The record contains the following stipulation: "Counsel for defendants agree that at the time of the death of Mr. Waters, the books concerning which testimony has been given at this hearing today by Mr. Resley and Mr. Gardner shows the three Thomas notes, one of $32,-000.00 and two others, one of $20,500.00 and one of $1,900.00, as being his property, and they do not show any common stock of G. C. Murphy Company as being his property or being the property of anybody, in particular, Mr. William R. Thomas. By Mr. Meyers: Does that apply as to the date of Mr. Waters' death? By Mr. Shettig: That applies as of the date of Mr. Waters' death."

The blank endorsement of the certificates of stock and their registration in the name of the pledgee, considered with the other evidence referred to, does not sustain the sale averred: compare *Conyngham's Appeal,* 57 Pa. 474, 481; *Jones v. Costlow,* 349 Pa. 136, 138, 36 A. 2d 460; it may have been done to enable the pledgee to receive the dividends direct from the corporation.

---

[1] Wigmore (3rd ed. 1940) section 1779, p. 212; *Kaufmann's Estate,* 281 Pa. 519, 533, 127 A. 133.

Waters, the pledgee, died August 14, 1933. An accountant, connected with Main & Co., testified that until January 1, 1934, the notes were entered on Waters' books as an indebtedness of $54,400 due by the pledgor, and that on January 1, 1934, which was after the pledgee's death, the bills receivable account was discontinued by a journal transfer containing the following explanation: ". . . for 1655 shares of G. C. Murphy Company common stock held as collateral on loans to William R. Thomas, deceased. It now develops that these 1655 shares were fully transferred to John H. Waters on October 28, 1931, as full settlement of claims for loans amounting to $54,400.00." There is no evidence of the making of the settlement so recorded and we consider it irrelevant. The original answer alleged that, by the sale, plaintiffs became entitled to a credit of $41,375; by an amended answer, defendants credited plaintiffs with the face amount $54,400. In their brief, defendants say that Waters ". . . maintained another set of books with reference to his personal affairs," and that "At the time of the transfer of the stock no entry was made in this journal and ledger showing the ownership of the stock . . ."

Defendants also contend that the fact that, at Waters' death, the shares of stock were found registered in his name creates a presumption that they "belonged to Waters when he died," which "cast on the plaintiffs the burden of proving that Waters was not continuously the absolute owner . . . and that his title was conditional, if it was." The contention must be rejected. The evidence is that Waters' title was that of pledgee, subject to the pledgor's equity of redemption; that status continued until such time as evidence showed a change: compare *Zuback v. Bakmaz,* 346 Pa. 279, 282, 29 A. 2d 473. The burden of proving it was on defendants who alleged it. Until foreclosure, the pledgee could not obtain an absolute title and the foreclosure could take place only pursuant to the agreement contained in the notes; defendants' averment of sale was an apparent

recognition of the necessity for such action. They have not shown any right to detain the collateral, the debt having been paid.

The next proposition to be considered is that the defendant distributees, who are said to have acted innocently in receiving the stock as distributive shares of the Waters' Estate, should not be required to reimburse plaintiff for all the proceeds from the stock with interest and without deduction for income taxes which they paid on their respective incomes. The administrator of Waters made distribution in 1935; accordingly no order has been made against him as a defendant in this proceeding: see *Thomas v. Waters*, 342 Pa. at pages 132 and 133, 18 A. 2d 872. As was stated in the former opinion, the Orphans Court, at the audit of the administrator's account, had approved distribution in kind; the notes were part of the property with which the administrator had charged himself and formed part of the property distributed, each distributive share necessarily carrying with it a corresponding share of the collateral; it is immaterial that, at the time, the notes were physically located in decedent's safe and not in the courtroom. Legally they were in the administrator's possession as his account disclosed; the distribution in kind was of what he had. So far as appears in the record, the administrator complied with the decree of distribution. Defendants present a contention in their supplemental brief that an amount equal to the amount of the dividends received by the administrator should be deducted from the amount ordered to be paid by the distributees on the ground that claim for that amount should have been made at the audit of the account of Waters' administrator. There is nothing to commend that argument. Any dividends received by the administrator were creditable by him first to interest on the notes and then to principal. As was stated in the former opinion, the Thomas executors were debtors, not creditors, of the Waters' estate at that time.

The distributees have now been ordered to return the stock pledged and the increase or profits accruing from the possession of it from and after the date when the debt was discharged which, as we understand it, was in October, 1937. "The pledgee has the duty to account to the pledgor for the increase or profits accruing to the pledgee as a result of the possession of the pledged chattel." Restatement, Security, section 27; see *Plucker v. Teller*, 174 Pa. 529, 34 A. 208.

It is unnecessary to discuss the details of the accounts. The decree is predicated on the fact that the pledgees received and held the stock innocently and without notice of plaintiffs' claim until shortly before suit was brought. We agree with the learned court below that defendants may not deduct income taxes paid; such payments were not made for the care or preservation of the collateral and did not enhance its value: cf. *Gordon v. Mohawk Bond & Mortgage Co.*, 317 Pa. 257, 176 A. 422. Income taxes are not taxes on property in that sense: cf. *Northern Liberties Gas Co. v. U. G. I.*, 348 Pa. 433, 35 A. 2d 284. While true that defendants were informed of plaintiffs' claim by the suit and thereafter received dividends which they must now pay to the plaintiffs, we are constrained to differ from the learned court below with respect to the item of interest imposed at the rate of 3% on the dividends and profits received from and after the date when the debt was paid. In surcharge cases which involve a breach of duty, interest rates have varied from 2½% in *Kenin's Trust Estate (No. 1)*, 343 Pa. 549, 23 A. 2d 837, to 4% in *Stirling's Estate*, 342 Pa. 497, 21 A. 2d 72, but a court of equity may in its discretion refrain from inflicting penalties which it considers unjust in the circumstances: *Harton's Estate*, 331 Pa. 507, 521, 1 A. 2d 292. We understand from the brief that the Thomas estate is insolvent and think that on this record the principles of equity will be satisfied by striking from the decree the 3% interest charge.

Decree affirmed as modified, defendants to pay the costs.