J-S24015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: I.S.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.D. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1786 WDA 2016 |

Appeal from the Order October 21, 2016
In the Court of Common Pleas of Lawrence County
Civil Division at No(s):  20046 OF 2014 O.C.


BEFORE:   PANELLA, J., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, J.                    **FILED APRIL 18, 2017**


S.D. ("Mother") appeals from the order entered on October 21, 2016, denying, without prejudice, her petition to terminate the parental rights of D.R. ("Father") to their daughter I.S.R. (born in August 2012) ("Child"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (5), and (b).[1] We affirm.

In its opinions entered on October 21, 2016 and December 7, 2016, the trial court set forth the factual background and procedural history of this

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Father has not filed a brief in this appeal, nor has he filed an appeal on his own behalf.

J-S24015-17

appeal. **See** Trial Court Opinion, 10/21/16, at 1-3; and Trial Court Opinion,

12/7/16, at 1-3.

In its opinion entered on October 21, 2016, the trial court stated as

follows:

> Before the [c]ourt for consideration is a Petition for
> Involuntary Termination of Parental Rights filed by the
> Petitioner/Natural Mother, [S.D.] (hereinafter, "Mother") which
> seeks to terminate the parental rights of the Respondent/Natural
> Father, [D.R.], (hereinafter, "Father") regarding the minor child,
> [I.S.R.] (hereinafter, "I.S.R."), born [in August 2012]. The
> Petition alleges as the bases for termination of parental rights
> the statutory authority set forth in Sections 2511(a)(1) and (5)
> of the Adoption Act.
>
> Section 2511(a)(1) provides that the rights of a parent
> may be terminated if the parent by conduct continuing for a
> period of at least six (6) months immediately preceding the filing
> of the petition either has evidenced a settled purpose of
> relinquishing parental claim to a child or has refused or failed to
> perform parental duties. 23 Pa.C.S.A. §2511(a)(1). Section
> 2511(a)(5) provides that parental rights may be terminated
> where the child has been removed from the care of the parent
> by the court or under a voluntary agreement with an agency for
> a period of at least six months, the conditions which led to the
> removal or placement of the child continue to exist, the parent
> cannot or will not remedy those conditions within a reasonable
> period of time, the services or assistance reasonably available to
> the parent are not likely to remedy the conditions which led to
> the removal or placement of the child within a reasonable period
> of time and termination of the parental rights would best serve
> the needs and welfare of the child. 23 Pa.C.S.A. §2511(a)(5).
>
> The [trial court] initially conducted hearings in this matter
> on March 6, 2015, July 30, 2015, September 8, 2015 and
> November 13, 2015. The record was then closed. The [trial
> court] thereafter entered an Order on November 13, 2015 which
> directs … [F]ather to file a brief within fourteen (14) days of
> receipt of the notes of testimony for the November 13, 2015
> hearing, and Mother to file a brief no later than fourteen (14)
> days after receipt of Father's brief. The notes of testimony

- 2 -

regarding the November 13, 2015 hearing were filed on November 19, 2015. … [F]ather filed his brief on December 10, 2015, and Mother filed her brief on January 4, 2016.

The record before the [trial court] as of November 13, 2015 establishes that the natural parents resided together for a short period of time both before and after the child's birth. They never married. The parents' relationship with each other was very contentious, with Mother filing at least three (3) Protection From Abuse actions against Father. Additionally, multiple Contempt of Court Petitions arising from alleged violations of the Protection From Abuse Act were filed by Mother. After the child's birth, Father underwent treatment in drug and alcohol rehabilitation. He failed to exercise his custodial rights with I.S.R. while he was in treatment.

Of utmost importance to rendering a decision in this matter is that the initial Petition for Termination of Parental Rights indicates that [A.D.], I.S.R.'s Godmother, is named as the proposed adoptive parent. The testimony establishes that [A.D.] is 39 years old, is married, has three (3) children and is the best friend of the maternal grandmother, [D.B.] (hereinafter, "Maternal Grandmother"). The following testimony references the intentions of [A.D.] relative to the prospective adoption as set forth beginning on page 22 of the transcript from the March 6, 2015 hearing:

Page 22 - Question: Is it your intention to adopt the minor child if rights were terminated, Father's rights were terminated?

Page 23 - Answer: Yes.

Question: Is your Husband aware of that fact?

Answer: Yes.

Question: Is he agreeable to that?

Answer: Yes.

(N.T., March 6, 2015, p. 22). [A.D.'s] other testimony can be summarized as referring to her involvement with Mother and her relatively consistent involvement with I.S.R. since her birth.

- 3 -

In addition to [A.D.'s] interest in becoming an adoptive parent, the hearing testimony reflects that Maternal Grandmother is also willing to serve as adoptive parent. Maternal Grandmother is married. Mother does not reside with either prospective adoptive parent.

In researching this matter, the [trial court] studied the case of *In re: Adoption of M.R.D and T.M.D.*, 128 A.3d 1249 (Pa.Super. 2015). Significantly, this Superior Court case was issued on December 8, 2015, after close of testimony, but prior to the time briefs were due/filed. The *In re: M.R.D.* case was important at the relevant time because it provides the following:

> "Any individual may become an adopting parent." 23 Pa.C.S.A. § 2312. The "any individual" language permits a non-spouse to adopt even where one of the natural parents continues to retain custody, upon "cause shown." *In re Adoption of R.B.F.*, 569 Pa. 269, 280-81, 803 A.2d 1195, 1202 (2002); 23 Pa.C.S.A. § 2901. A non-spouse adoptive nominee can be a child's maternal grandfather. *In re Adoption of J.M.*, 991 A.2d 321, 326 (Pa.Super. 2010). The purpose of the "cause shown" approach, borrowed from Section 2901, is consistent with legal precedent which requires the court to analyze the integrity of the "proposed adoption" and if it is likely to happen. *See, In re T.R.*, 502 Pa. 165, 169 n. 10, 465 A.2d 642, 644 n. 10 (1983) (insisting court should actually consider adoptive candidate's intent to adopt, and not merely accept adoption averment on its face, to determine if petitioner(s) genuinely seek termination "solely as an aid to adoption"). *See also, In re Adoption of L.J.B.*, *supra* at 230, 18 A.3d at 1108 (stating court should consider, and not merely accept on its face, averment of intent to adopt, to ascertain that termination is sought as aid to adoption and formation of new parent-child relationship).

[*In re: M.R.D.*, 128 A.3d at 1260].

Based upon the law set forth in *In re: M.R.D.*, the date the Superior Court decided the matter and the relative lack of information regarding cause shown for Mother to retain custody and the intent to adopt by proposed adoptive parents as

submitted during hearings in the underlying matter, the [trial court] entered an Order on March 1, 2016 which extended an opportunity for the parties to file a supplemental brief in light of the *In re: M.R.D.* Superior Court decision.[1] Father filed a Supplemental Memorandum on March 15, 2016, and Mother filed a Supplemental Memorandum on March 21, 2016. Following a review of the supplemental memoranda, the [trial court] entered an Order on April 1, 2016 reopening the record so as to address issues surrounding the prospective adoption as it relates to the recently decided Superior Court decision in *In re: M.R.D.*

An evidentiary hearing was conducted on August 30, 2016. During this hearing, Mother and Maternal Grandmother appeared and testified. Through testimony, it was confirmed that the [m]aternal [g]randmother desired to serve as adoptive parent and that Mother did not intend to terminate her parental rights over I.S.R.[] Also, Mother and Maternal Grandmother did not intend to reside together.

On August 29, 2016 the Supreme Court of Pennsylvania at *In re: Adoption of M.R.D. and T.M.D.*, [145 A.3d 1117], 2016 WL 4541129 (Pa. 2016)[,] decided the appeal from the Superior Court and reversed and remanded the matter.[2] In doing so, the Supreme Court concluded that the Adoption Act does not permit a maternal grandfather to adopt a minor child with the child's mother without the mother relinquishing her parental rights simply as means to facilitate a termination of the biological father's parental rights. The Supreme Court reasoned that the grandfather and mother were not part of an intact cohabitating family unit, and relinquishment of parental rights by the mother was necessary to avoid unique complications. The Supreme Court further reasoned that[,] by allowing such an adoption, the door would open for misuse of adoption proceedings by spiteful parents seeking to involuntarily terminate the rights of unwanted parents.

As a result of the most recent decision regarding an adoption with mother and grandparent serving as parents as set forth in the Supreme Court decision of *In re: M.R.D.*, *supra*, [the trial court] concludes it is bound to deny … Mother's Petition for Involuntary Termination of Parental Rights since Maternal Grandmother is the proposed adoptive parent and there is no indication that Mother is relinquishing her parental rights. As such, the [trial court] will dismiss Mother's Petition for

Termination of Parental Rights without prejudice should a different adoptive parent be willing and able to serve as such.

_____

[1] A Petition for Allowance of Appeal from the Order of the Superior Court regarding **In re: M.R.D.** was filed with the Supreme Court of Pennsylvania [on January 7, 2016, and was granted] on March 16, 2016.

[2] On August 29, 2016, the court conducted its own research through Westlaw to investigate whether the Supreme Court issued this decision. However, the [trial court] did not find a posting of the decision on said date.

Trial Court Opinion, 10/21/16, at 1-6 (footnotes in original).

Mother filed a timely notice of appeal, along with a concise statement

of errors complained of on appeal pursuant to Pa.R.A.P 1925(a)(2)(i) and (b)

with regard to the October 21, 2016 order.

Mother raises two issues:

I. Did the [t]rial [c]ourt err in denying Mother's Petition for Termination of Parental Rights of the Natural Father by improperly applying **In Re: Adoption of M.R.D. and T.M.D**., 128 A.3d 1249 (Pa.Super. 2015) retroactively, as the decision was issued subsequent to the filing of the Petition and after the [t]rial [c]ourt initially concluded testimony[?]

II. Did the lower court err in denying Mother's Petition for Termination of Parental Rights of the Natural Father as Mother Presented sufficient evidence to establish a basis for termination of Father's parental rights under Section 2511 (a)(1) and complied with all of the provisions of the Adoption Act[?]

Mother's Brief, at 5. As explained below, we need not reach the second

issue.

Mother's issue on appeal raises a pure question of law. Our standard of review is *de novo* and our scope of review is plenary. ***See In re B.L.J., Jr.***, 938 A.2d 1068, 1071 (Pa. Super. 2007).

In ***In re Adoption of M.R.D.***, 128 A.3d 1249 (Pa. Super. 2015) (*en banc*), this Court held that the trial court properly granted the petition to terminate the children's father's parental rights filed by the child's biological mother and her father, the children's maternal grandfather, so that the maternal grandfather could adopt the children. We explained that § 2512 of the Adoption Act governs who may file a petition to terminate parental rights and the requirements for the petition's contents. The *en banc* court stated:

> Significantly, "Any individual may become an adopting parent." 23 Pa.C.S.A. § 2312. The "any individual" language permits a non-spouse to adopt even where one of the natural parents continues to retain custody, upon "cause shown." ***In re Adoption of R.B.F.***, 803 A.2d 1195, 1202 (Pa. 2002); 23 Pa.C.S.A. § 2901. A non-spouse adoptive nominee can be a child's maternal grandfather. ***In re Adoption of J.M.***, 991 A.2d 321, 326 (Pa. Super. 2010). The purpose of the "cause shown" approach, borrowed from Section 2901, is consistent with legal precedent which requires the court to analyze the integrity of the "proposed adoption" and if it is likely to happen. ***See In re T.R.***, 465 A.2d 642, 644 n.10 (Pa. 1983) (insisting court should actually consider adoptive candidate's intent to adopt, and not merely accept adoption averment on its face, to determine if petitioner(s) genuinely seek termination "solely as an aid to adoption"). ***See also In re Adoption of L.J.B.***, 18 A.3d 1098, 1108 (Pa. 2011)] (stating court should consider, and not merely accept on its face, averment of intent to adopt, to ascertain that termination is sought as aid to adoption and formation of new parent-child relationship).

128 A.2d at 1260.

This Court found that the trial court's determination that the mother and maternal grandfather had established "cause shown" to proceed with the maternal grandfather's proposed adoption of the children was supported by ample, competent evidence of record. *See id*., at 1263. We also agreed with that the trial court's determination that there was sufficient evidence to warrant the involuntary termination of the father's parental rights. *See id*. at 1263-1265. We then addressed the father's contention that the proposed adoption would not create a new family unit. We rejected the father's argument, citing *In re Adoption of J.M.*, 991 A.2d at 326, for the proposition that "'cohabitation' is not the *sine qua non* of the 'new family unit.'" We found the case relied upon by the father, *In re Adoption of L.J.B.*, was factually distinguishable and misplaced as supporting his argument. We focused on the familial relationship that the maternal grandfather had established with the children, instead of the fact that the mother and the maternal grandfather would not be residing together. *See id*., at 1265. Accordingly, this Court affirmed the trial court's decree. *See id*., at 1266.

Our Supreme Court granted Father's petition for allowance of appeal. The Court explained the statutory scheme set forth in the Adoption Act as follows:

> Section 2512(a) of the Adoption Act sets forth the parties who may file a petition for involuntary termination, including, *inter alia*, a parent or an agency. *Id*. § 2512(a). In contrast to an agency petition, a parent petitioning to terminate the rights

of the child's other parent must file a termination petition containing "an averment that the petitioner will assume custody of the child *until such time as the child is adopted*." *Id*. § 2512(b) (emphasis added). Thus, the petitioning parent must demonstrate that an adoption of the child is anticipated in order for the termination petition to be cognizable. *See In re B.E.*, 377 A.2d 153, 155 (Pa. 1977); *In re Adoption of L.J.B.*, 18 A.3d 1098, 1107 (Pa. 2011) (plurality). Section 2512(b)'s adoption requirement is consistent with the rationale behind permitting the involuntary termination of a parent's rights, which we have explained is "to dispense with the need for parental consent to an adoption when, by choice or neglect, a parent has failed to meet the continuing needs of the child," rather than "to punish an ineffective or negligent parent, or provide a means for changing the surname of the child." *B.E.*, 377 A.2d at 155; *L.J.B.*, 18 A.3d at 1108 (quoting *B.E.*).

Because a termination petition filed by one parent against the other must occur in the context of an anticipated adoption, and because adoption is a statutory right, we note that the parent seeking termination must strictly comply with all pertinent provisions of the Adoption Act in order for the adoption to be valid. *See In re Adoption of R.B.F.*, 803 A.2d 1195, 1199 (Pa. 2002) ("To effect an adoption, the legislative provisions of the Adoption Act must be strictly complied with."). While the Adoption Act provides that "[a]ny individual may become an adopting parent," 23 Pa.C.S. § 2312, relevant to the instant matter, Section 2711 of the Act requires the parent seeking termination to consent to the adoption and to relinquish his or her parental rights. *Id*. § 2711(a)(3) (requiring consent to adoption by the parent of an adoptee who is under 18 years of age); § 2711(d)(1) (setting forth contents of consent, including the statement "I understand that by signing this consent I indicate my intent to permanently give up all rights to this child"). Requiring parental consent to the adoption and the relinquishment of his or her parental rights "permits the child and the adoptive parent or parents to establish a new parent-child relationship." *B.E.*, 377 A.2d at 156. Thus, where "no new parent-child relationship is contemplated[,] . . . the involuntary termination of . . . parental rights . . . is not permitted under the Adoption Act." *Id*.; *L.J.B.*, 18 A.3d at 1108 (quoting *B.E.*).

An exception to this relinquishment requirement exists, however, in second-parent adoption cases where the adopting

party is the spouse of the parent seeking termination — that is, in the context of a stepparent adoption. Indeed, where the parent consents to an adoption of his child by his or her spouse — i.e., the stepparent — the consenting parent is permitted to retain his or her parental rights. **See** 23 Pa.C.S. § 2903. ("Whenever a parent consents to the adoption of his child by his spouse, the parent-child relationship between him and his child shall remain whether or not he is one of the petitioners in the adoption proceeding.").

Additionally, if the parent does not consent to relinquish his or her parental rights, the court nevertheless may enter an adoption decree upon "cause shown." **Id**. § 2901. In **R.B.F.**, wherein parents sought to have their domestic partners adopt their children, but did not wish to relinquish their parental rights, we interpreted Section 2901's "cause shown" language as giving the trial court the discretion to grant an adoption petition in circumstances where, as in that case, the party seeking adoption is unable to meet the statutory requirements for adoption, but has demonstrated cause for his or her noncompliance with those requirements. **R.B.F.**, 803 A.2d at 1201-02.

*In re Adoption of M.R.D.*, 145 A.3d at 1120 (footnote omitted) (emphasis in original).

Our Supreme Court went on to discuss the novel issue before it as follows:

As noted above, we held in **R.B.F.** that, in cases in which a party seeking adoption is unable to meet the statutory requirements under the Adoption Act, Section 2901 allows the party to show "cause" as to why he or she cannot meet those requirements, and, upon such a showing, the trial court has the discretion to waive the requirement and grant the adoption petition. **R.B.F.**, 803 A.2d at 1201-02. In those consolidated cases, same-sex couples sought a second-parent adoption of the legal parent's child without the legal parent having to relinquish his or her parental rights. Finding that it was, indeed, possible for parties to waive the relinquishment requirement under Section 2901 upon a showing of cause, we remanded to the respective trial courts to determine whether the couples showed

- 10 -

cause to waive the requirement under the particular circumstances of their cases. *Id*. at 1203.

Similar to the appellants in *R.B.F.*, [the mother and grandfather] also seek to waive the Adoption Act's relinquishment requirement, albeit under a different factual scenario. Indeed, unlike in *R.B.F.*, which did not involve involuntary termination due to the absence of a second legal parent, there obviously is no intimate relationship between the legal parent [(the mother)] and the prospective adoptive parent [(the grandfather)]. Rather, [the mother] and [the grandfather], who share a parent-child relationship of their own, seek to waive the relinquishment requirement in order to allow [the grandfather] to adopt [the children] and co-parent them with [the mother], thereby facilitating the termination of [the father's] parental rights. Thus, we consider for the first time whether a parent and a grandparent — and, more specifically, [the mother and the grandfather] — may establish cause under Section 2901 to waive the requirement that the parent relinquish her parental rights when the grandparent seeks to adopt that parent's children — his grandchildren.

We explained in *R.B.F.* that a party could show cause by clear and convincing evidence if he or she demonstrated that "the purpose of Section 2711(d)'s relinquishment of parental rights requirement will be otherwise fulfilled or is unnecessary under the particular circumstances of [his or her] case." *Id*. The purpose behind the termination or relinquishment of an existing parent's rights prior to an adoption is to facilitate a "new parent-child relationship" between the child and the adoptive parent, *B.E.*, 377 A.2d at 156 ("Termination of parental rights permits the child and the adoptive parent or parents to establish a new parent-child relationship through adoption"), and to protect "the integrity and stability of the new family unit." *J.D.S.*, 763 A.2d at 871; *L.J.B.*, 18 A.3d at 1108. Accordingly, [the mother and grandfather] may show cause to waive the relinquishment requirement only if they can establish that permitting [the grandfather] to adopt [the children] while [the mother] retains her parental rights will promote a new family unit or that it is otherwise unnecessary to require [the mother] to relinquish her parental rights under the circumstances of this case.

*Id*., at 1127 (footnote omitted).

The Court held that the mother and the maternal grandfather had failed to establish legal cause to excuse the requirement that the mother relinquish her parental rights under § 2711 prior to the proposed adoption, and, thus, the adoption could not proceed, stating as follows:

> In the standard adoption case, termination and relinquishment of parental rights is necessary so that the child may be adopted by, and form new bonds with, his or her new family, unencumbered by the former legal parents. By contrast, in second-parent adoption cases in which the relinquishment of a parent's rights is not required — i.e., stepparent adoptions and adoptions by same-sex couples — relinquishment of the parent's rights is unnecessary, and indeed damaging. In such cases, the parent and the prospective adoptive parent are committed partners — that is, they are involved in a horizontal relationship, are equals as between each other, and are equals with respect to the child. Adoption in such circumstances allows the prospective adoptive parent to create a new parent-child relationship with the legal parent's child and a family unit *together with* the co-parent to whom he or she is committed. Thus, because the legal parent and prospective parent in second-parent adoption cases are part of the same family unit, the relinquishment requirement undermines, rather than promotes, family stability.

> The same cannot be said for the instant case, however, because [the mother and grandfather] are not similarly part of an intact family unit. Indeed, rather than being involved in a committed, horizontal relationship such as stepparents or same-sex partners, [the mother and grandfather] share a vertical, parent-child relationship. Moreover, in this case, [the grandfather] will remain married to [the grandmother] and will continue to live in a separate residence with her after the adoption. Adoption does not foster a family unit under circumstances where, as here, the adopting party is already part of — and will continue to be part of — a family unit that is separate from the unit which he seeks to promote and join through adoption.

> Additionally, relinquishment is necessary in this case to avoid a host of unique complications. For example, such an

arrangement would create confusing hybrid relationships within the family — [the grandfather] would be both [the children's] father and grandfather, [the grandmother] would be both a grandmother and a stepmother, and, more confusing still, because of [the grandmother's] status as a stepmother, [the mother would be both a mother to Children and, technically, their stepsister. Further complicating matters, if Mother ever seeks to marry, the Act does not require [the grandfather] to terminate his parental rights in favor of [the mother's] spouse; thus, he could decide to remain [the children's] father and prevent [the mother's] spouse from having legal rights over [the children]. [The grandfather] has neither considered, nor explained, how his role with [the children] might change if [the mother] married. N.T., 8/13/13, at 23-26.

Lastly, although the orphans' court rejected the possibility in the instant case, permitting [the grandfather] to adopt and co-parent [the children] with [the mother] would nevertheless open the door for misuse of adoption proceedings by spiteful parents as a means to involuntarily terminate the rights of unwanted parents. . . .

[The mother and grandfather] have not met their burden of showing that the proposed adoption by [the grandfather] would serve the underlying purposes of relinquishment, or that relinquishment is otherwise unnecessary under the circumstances of this case. *See R.B.F.* In other words, they have not demonstrated that the proposed co-parenting arrangement would create a new family unit or a new parent-child relationship, particularly, and significantly, given [the grandfather's] existing parent-child relationship with [the mother], and his intention to continue living in a separate residence with [the grandmother] following the adoption.

* * *

As the proposed adoption is not otherwise valid, we need not consider whether the adoption would have been in [the children's] best interests.

In sum, [the mother and grandfather] have not demonstrated that, under Pennsylvania law, a valid adoption of [the children] is anticipated; thus, their termination petition is not cognizable, and so they are precluded from seeking the

involuntary termination of [the father's] parental rights. Accordingly, we reverse the order of the Superior Court and remand to the orphans' court for proceedings consistent with this opinion.

***Id***., at 1128-1130 (emphasis in original) (footnote omitted).

In its Rule 1925(a) opinion entered on December 7, 2016, the trial court stated the following:

This Opinion is issued pursuant to Pa.R.A.P. No. 1925(a) in support of the Opinion and Order of Court of October 21, 2016 which denies the Petition for Involuntary Termination of Parental Rights filed by the [n]atural [m]other, [S.D.]. After a careful review of the Statement of Errors Complained of on Appeal, in addition to the record established in the above-captioned case, [the trial court] determines that the Opinion issued on October 21, 2016 sets forth sufficient justification for its decision regarding the errors complained of on appeal. To that extent, the Superior Court is directed to the Opinion. Notwithstanding, so as to more fully address each issue raised by the [n]atural [m]other in order to assist the Superior Court, the Trial Court submits this Opinion.

For purposes of this appeal, the operative facts include that the [n]atural [m]other desired to retain her parental rights, while petitioning that the [n]atural [f]ather's rights be terminated. The prospective adoptive parent was the maternal grandmother with whom the [n]atural [m]other did not reside. Testimony was initially completed on November 13, 2015, and the record closed. A briefing schedule was implemented for the parties by Order of Court.[1] On December 8, 2015, the Superior Court issued an Opinion in ***In re: Adoption of M.R.D and T.M.D.***, 128 A.3d 1249 (Pa.Super. 2015), which was directly applicable to the matter pending before the [trial court]. No party addressed the Superior Court decision in their respective brief. As such, by Order of Court of March 1, 2016, the [trial court] extended an opportunity for the parties to file a supplemental brief in light of the ***In re: M.R.D.*** Superior Court decision.[2] Following receipt and review of the supplemental memoranda, the [trial court] believed it required additional evidence on the issue of the prospective adoption as it related to the Superior Court decision in ***In re: M.R.D.*** As such, the matter

was reopened and a further hearing was scheduled by the Trial Court for June 2, 2016. This hearing was subsequently continued to August 30, 2016. On August 29, 2016, the day prior to the hearing, the Supreme Court issued its Opinion in *In re: M.R.D.*, 145 A.3d 1117 (Pa. 2016). The evidentiary hearing in the matter *sub judice* was conducted on August 30, 2016. The record was then closed again.

In *In re: M.R.D.*, *supra*, the Supreme Court concluded that the Adoption Act does not permit a maternal grandfather to adopt a minor child with the child's mother without the mother relinquishing her parental rights, simply as means to facilitate a termination of the biological father's parental rights. The Supreme Court reasoned that the mother and grandfather in *In re: M.R.D.* were not part of an intact cohabiting family unit, and relinquishment of parental rights by the mother was necessary to avoid unique complications. The Supreme Court further reasoned that[,] by allowing such an adoption, the door would open for misuse of adoption proceedings by spiteful parents seeking to involuntarily terminate the rights of unwanted parents. Because the [n]atural [m]other here desired to retain her parental rights, to have the parental rights of the [n]atural [f]ather terminated and to have the maternal grandmother serve as the adoptive parent of the child without the [n]atural [m]other and maternal grandmother residing together as an intact family, the [trial court] felt bound by the Supreme Court decision in *In re: M.R.D.* to deny the [n]atural [m]other's Petition seeking to terminate the parental rights of the [n]atural [f]ather.

The [n]atural [m]other raises the following two errors complained of on appeal: 1) that the [trial court] improperly denied the [n]atural [m]other's Petition for Termination of Parental Rights by applying *In Re: Adoption of M.R.D. and T.M.D.*, 128 A.3d 1249 (Pa.Super. 2015)[,] retroactively, as that decision was issued subsequent to the filing of the Petition and after the [trial court] initially concluded testimony; and, 2) that the [trial court] improperly denied the [n]atural [m]other's Petition as Mother presented sufficient evidence to establish a basis for the termination of the Father's parental rights.

Generally, "a court may, in its discretion, reopen the case after a party has closed for the taking of additional testimony, but such matters are peculiarly within the sound discretion of the

trial court, and a denial of (an) opportunity for a rehearing for the purpose of introducing additional evidence will not ordinarily be disturbed." ***Commonwealth v. Deitch Co.***, 449 Pa. 88, 295 A.2d 834 (1972); ***see, Colonna v. Colonna***, 791 A.2d 353 (Pa.Super. 2001); ***In re: J.E.F.***, 187 Pa. 455, 409 A.2d 1165 (1979). Such a ruling will be disturbed only if the court has abused its discretion. ***Thomas v. Waters***, 350 Pa. 214, 38 A.2d 237 (1944); ***see also, Van Buren v. Eberhard***, 377 Pa. 22, 104 A.2d 98 (1954).

Here, the Superior Court Opinion in ***In re: M.R.D.*** was issued within one month of the final hearing which initially closed the testimony. The parties' briefs were due near the time the Superior Court Opinion was issued, and no party mentioned that Opinion in their brief. As both the situation in this matter and in ***In re: M.R.D.*** concerned termination of parental rights and a proposed adoption by a natural parent who sought to retain her parental rights and a grandparent, the [trial court] felt that the parties should specifically address this scenario. It is significant that the [trial court] could not find binding authority for the [n]atural [m]other's proposition that a trial court must apply the law as it stands on the date of the filing of a petition for involuntary termination of parental rights to the matter being decided. As such, based upon all of the foregoing, the [trial court] concludes it proceeded accordingly in reopening the record and applying the current law, given the timing of the hearings, the briefing schedules and the dates the relevant appellate court decisions were issued.

As to the [n]atural [m]other's argument that the [trial court] erred in denying the [n]atural [m]other's Petition because the [n]atural [m]other presented sufficient evidence to establish a basis for termination of Father's parental rights under Section 2511(a)(1) and complied with all provisions of the Adoption Act, the [trial court] believes that [n]atural [m]other's point is reasonable in that the [n]atural [f]ather here did not have sufficient contact with the minor child to justify him [sic] retaining his parental rights over the child. However, the [trial court] based its decision in denying the [n]atural [m]other's Petition pursuant to the Supreme Court Opinion in ***In re: M.R.D., supra***, namely, that an adoption would be improper if the prospective adoptive parents were a grandparent and a natural parent whose parental rights are not relinquished who

did not cohabitate as an intact family, rather than any lack of involvement by the [n]atural [f]ather with the child.

_____

[1] The November 16, 2015 Order provides that [c]ounsel for Natural Father was to file his brief within fourteen (14) days of receipt of the notes of testimony for the final hearing being filed, and Counsel for the [n]atural [m]other was to file her brief within fourteen (14) days of the date the [n]atural [f]ather's brief was filed. The notes of testimony were filed on November 19, 2015. Natural Father filed his brief on December 19, 2015, and Natural Mother filed her brief on January 4, 2016.

[2] The Petition for Allowance of Appeal to the Supreme Court filed on January 7, 2016 was granted by the Supreme Court on March 16, 2016.

Trial Court Opinion, 12/7/16, at 1-5 (footnotes in original).

After a careful review of the record in this matter, we find no error of law on the part of the trial court and no abuse of the trial court's discretion in finding the termination petition invalid under the Supreme Court's holding in *In re Adoption of M.R.D.* The trial court was constrained to apply the Supreme Court's holding to the instant matter, for the reasons set forth by the trial court in its Rule 1925(a) opinion. We find no merit to the contention that the trial court should have rendered its decision when it first closed the evidence, and applied the law as it had been interpreted as of the time the petition was filed. Mother does not provide any statutory or case law in her brief, nor did our independent research reveal any statute or case, that would have precluded the trial court from delaying its decision, reopening the record, and then rendering its decision after the Supreme Court had ruled on the novel issue.

We affirm the trial court's order based on the discussion in the trial court's opinion filed on December 7, 2016, cited above. As such, we need not consider the issue of whether the involuntary termination of Father's parental rights was warranted pursuant to the evidence in this matter.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/18/2017